ROBERTSON, Presiding Judge.
On our ex mero motu reconsideration of this ease, the original opinion is withdrawn and the following substituted therefor:
David Matthew Harnish and Kelly Harnish were divorced by a judgment of the Mobile County Circuit Court entered on May 29, 1992. Pursuant to the divorce judgment, the mother was awarded custody of the parties’ minor child. The father was granted reasonable visitation, including visits on alternate weekends from 6:00 p.m. on Friday to 6:00 p.m. on Sunday, from December 25 at 3:00 p.m. until January 1 at 3:00 p.m., and for one month during the summer.
On May 6, 1993, the father filed a motion in the trial court, requesting that he be awarded custody of the minor child. On May 25,1993, the mother filed an answer, denying that a change of custody would be in the child’s best interest.
On August 18, 1993, the trial court held a hearing on the motion. At the close of the father’s case, the mother orally moved for a dismissal of the ease. See Rule 41(b), A.R.Civ.P. She argued that the father had failed to prove a prima facie ease. The trial court took the motion under submission and recessed the hearing. On August 24, 1993, without hearing any further evidence from either party, the trial court granted the mother’s Rule 41(b) motion.
The father filed a motion pursuant to Rule 59(e), Ala.R.Civ.P., citing 25 reasons presented at the August 18 hearing for awarding him custody of the minor child. On September 28, 1993, the father filed a rule nisi petition requesting the trial court to hold the mother in contempt for denying the father visitation with the child on two occasions. The trial court ultimately denied both the father’s rule nisi petition and his Rule 59(e) motion.
The father appeals, contending that he met the standard for modifying custody of the minor child as set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), and that the trial court abused its discretion by denying the father’s petition to hold the mother in contempt of court.
We first address whether the father met the standard for modifying custody of the minor child as set forth in McLendon, supra. The parent seeking a change of custody has the heavy burden of showing that the change in custody would materially promote the child’s best interests and welfare. Id. Furthermore, “[t]he positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child.” McLendon, 455 So.2d at 865.
The father testified that in January 1993 the mother telephoned and asked him to meet her in the emergency room at Spring-hill Memorial Hospital because the minor child, who was then five years old, had an earache. The father testified that when he arrived at the hospital, he found that there was pus in the child’s ears and the doctor *1174 informed him that the child had a severe ear infection. The father testified that the doctor prescribed an antibiotic, but that the mother failed to give the child all of the antibiotic and that she had failed to take the child for a recheck as the doctor had ordered. The father further testified that he was forced to take the child to a doctor to receive treatment for a rash on the child’s genitals. He stated that the doctor prescribed medication for the condition and told the father that the rash had arisen because the child had not been properly bathed.
The father testified that in February 1993 the mother had gotten upset with him about the child’s calling the father’s fiancée “mama,” and that the mother had picked up a shoe and struck him with it repeatedly in the presence of the child. The father stated that on the same day, also in the presence of the child, the mother had confronted his fian-cée and threatened her, “telling her that she was going to beat her up.” The father testified that the mother’s conduct had greatly upset the child.
The father testified that during the previous summer the mother had removed the child from the daycare program at the child’s school, for which he pays $250 per month, and had placed the child with an unlicensed daycare provider. The father testified that the mother often sends the child to babysitters, particularly to the child’s maternal grandmother. The father testified that the grandmother’s present husband had molested the mother and her sister when they were children.
The father testified that he was concerned about the mother bringing men into the house at night. He testified that, on several occasions, he had seen automobiles parked at the mother’s house from 11:30 p.m. until 3:00 a.m., and that on those occasions the lights in the house were out. He stated that, over a period of several months, he had seen three different cars there during those hours.
The father testified that since the divorce, the child has become withdrawn and secretive. He stated that since he filed the petition to change custody, the child has constantly expressed a desire to live with him and not to return to the mother’s house. He testified that the child is scared of talking about things that could be repeated to the mother because the child fears that if the mother hears them, the mother would whip the child.
Since the judgment of divorce, the father has remarried. He testified that his new wife is a kindergarten teacher at Magnolia Springs Christian School and that she gets along well with the child. Moreover, he testified that he no longer works from 3:00 p.m. to 11:00 p.m., but now gets off at 3:00 p.m., when the child returns from school. Thus, he says, there would be no need for a daycare. The father testified that he would be able to provide the child with a good home and that he would be able to supervise the child’s education and to provide for the child’s well-being.
Linda Colclough, a therapist to whom the Department of Human Resources referred the father, interviewed the child regarding the problems the child was having with the child’s mother. Ms. Colclough testified that the child was very distressed about living with the mother because, although the child loved the mother, the mother screamed at and beat the child with a belt, leaving black marks on the child’s buttocks. Ms. Cole-lough stated that the child was scared to talk to the father about the mother because when the child returned from visits with the father, the mother would spank the child with a belt until the child revealed everything that had occurred while the child had been with him. Moreover, Ms. Colclough testified that the child indicated that the mother’s screaming was excessive and had escalated in recent months (i.e., in those months since the father had filed his petition to modify custody). Ms. Colclough stated that the child had confided to her that the mother has a boyfriend whom the child has seen intoxicated and that the same boyfriend had shared with the mother a cigarette that “smelled funny.” Ms. Colclough further testified that the child repeatedly expressed a desire to live with the father. However, Ms. Colclough stated, when the child expressed this desire to the mother, the mother had told the child that if the child went to live with the father, then the mother would not visit the child. It was *1175 Ms. Colclough’s opinion that the child is being emotionally abused and that the father can provide a stable environment in which the child feels safe.
Based on the foregoing, we conclude that the father proved both that a change in custody would materially promote the child’s best interest and welfare and that the positive good brought about by the change would more than offset the inherently disruptive effect caused by uprooting the child. McLendon, supra. Thus, we hold that the trial court erred in granting the mother’s Buie 41(b) motion. Consequently, we reverse as to this issue and remand this case to the trial court for further proceedings, i.e., to allow the mother to present her evidence and testimony and to allow any rebuttal evidence by the father.
As to the other issue raised by the father, we cannot find from the record that the trial court abused its discretion by failing to hold the mother in contempt of court. Stack v. Stack, 646 So.2d 51 (Ala.Civ.App.1994).
The judgment of the trial court is hereby affirmed in part and reversed in part, and the cause is remanded for further proceedings.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THIGPEN and YATES, JJ., concur.