This case involves a custody modification.
The parties were divorced in 1984. The care, custody, and control of the parties' daughter was awarded to the mother, and the father was awarded reasonable visitation rights. *Page 1278 
In October 1988 the father filed a petition to modify custody, asking that the trial court grant the father permanent custody of the parties' child. The father asserted that a material change in circumstances had occurred: that the mother had voluntarily relinquished physical possession of the parties' child to the father.
After ore tenus proceedings the trial court entered, in pertinent part, the following:
 "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED BY THE COURT as follows:
 "1. The Court hereby finds that the [father] is a fit and proper person to share joint custody of the parties' minor child and to have the physical custody of said child during the times set forth in this Order and the Court is satisfied from the evidence that the change of custody which is hereby ordered by the Court materially promotes the best interests of the parties' minor child in this case.
". . . .
 "a. That the [father] and the [mother] shall have joint custody of the parties' minor child. . . . That the [father] shall have physical custody of the parties' minor child from one week before school starts in the Fall of each year, beginning in 1989, until the weekend following the day that school gets out in the Spring of each year. That the [mother] shall have physical custody of the parties' minor child beginning with the weekend following the day that school gets out in the Spring of each year until one week before school starts back in the Fall of each year beginning in 1989."
[The trial court then, among other things, addressed alternating visitation rights of each party when physical custody was vested in the other, and established a vacation and holiday schedule.]
The mother appeals, asserting that the trial court's modification of the legal and physical custody of the parties' child was erroneous.
We review the judgment of the trial court with a presumption of correctness and we will not reverse on appeal except for an abuse of discretion or where the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Flowers v.Flowers, 479 So.2d 1257 (Ala.Civ.App. 1985).
The record reveals that after the parties' divorce the mother lived in Haleyville, Alabama and the father lived in Double Springs, Alabama.
In the fall of 1987 the mother voluntarily agreed to allow the father to take physical custody of the parties' daughter. This was to allow the child to attend school in Double Springs because her school performance had dropped and the child was unhappy with the school she attended in Haleyville. Their daughter stayed at the father's home during the week and then returned to the mother's home on the weekends. This arrangement continued until May 1988 when the 1987-88 school year ended. She then returned to the mother's home during the week and the father's home during most of the weekends.
Once the 1988-89 school year began, her physical custody was, as per the agreement, with the father during the week and the mother on the weekends. In essence, the situation was exactly the same as the prior school year. The father then filed his petition for modification.
Because of the peculiar fact situation in this case, we believe a careful examination of the applicable standard of review will be helpful to an understanding of our decision.
In Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988), the supreme court stated:
 "There are two different standards for reviewing custody arrangements. If custody has not previously been determined, then the appropriate standard is 'the best interest of the children.' See Murphy v. Murphy, 479 So.2d 1261
(Ala.Civ.App. 1985); Ex parte Berryhill, 410 So.2d 416 (Ala. 1982). However, if there is a judgment granting custody to one parent, or if one parent has 'given up' legal custody, then custody will be changed
only if it would 'materially promote' *Page 1279 
the children's welfare. Ex parte McLendon, 455 So.2d 863 (Ala. 1984).
 "In McLendon, a judgment awarded custody of the divorced parents' infant child to the paternal grandparents. Approximately five years later, after the mother had remarried and had another child, she attempted to regain legal and physical custody of her first child. The court held that the appropriate standard was whether a 'change' in custody would materially promote the welfare of the child. . . . The reason for the stricter standard after custody has been determined once, is that uprooting children and moving them can be traumatic. Therefore, the benefit of moving the children must outweigh the potential harm. McLendon, supra."
In Couch the mother and father were initially, i.e. by the divorce decree, given joint legal and physical custody. Subsequently, it was decided by the parties that the children's interests would be better served by having their primary physical custody with the mother. This arrangement worked well until the mother remarried, moved to New York, and proposed taking the children there with her. The father reasserted his right to shared custody. The mother then filed an action seeking full custody of the children. The father responded by asking for primary physical custody of the children. The trial court awarded primary physical custody to the father and retained joint legal custody in the mother and father.
The supreme court in Couch held that, when the father informally agreed to allow the children to live primarily with the mother, he did not give up any of the rights given him by the divorce decree. He merely acted in a manner inconsistent with the divorce decree. Hence, since no court order was involved, the proper standard of review was the "best interests" of the children as opposed to the heavier burden established by McLendon.
In the case at bar, the mother informally agreed to allow the parties' daughter to live with the father. The mother did not give up her court ordered primary physical custody under this informal agreement. Voluntary agreements, between divorced parents, without the "blessing" of a court order are a legal
nullity. See, Couch. Consequently, under McLendon, the father as the noncustodial parent had the burden to prove that changing legal or physical custody, or both, would materially promote the best interests and welfare of their daughter.
Therefore, the next inquiry is whether the change of custody is warranted and supported by the evidence sufficient to meet the stringent requirements of McLendon. Since frequent disruptions of a child, caused by a change in custody, are to be condemned, the burden of proof placed upon the one seeking a custody change is heavy. The degree to which the best interests and welfare of the child are materially promoted should be proven to more than offset the disruptive effects that naturally result from uprooting a child from his or her present environment. The parent seeking a custody modification must show not only that he or she is fit, but also that the change of custody will materially promote the best interests and welfare of the child. McLendon.
We examine the evidence to see if the trial court's grant of shared legal custody and primary physical custody, during the school year, to the father can meet this standard.
At the ore tenus proceedings, more than twenty-five witnesses testified. A detailed summary of the testimony of each witness would not be helpful. The record reveals that the mother and father have remarried and each has had another child with his or her second spouse.
The child's first grade teacher from Double Springs testified that when the child transferred from Haleyville she was "behind," but showed great improvement because the families of both the mother and the father were helping her at night and on the weekends. The first grade teacher also stated that the mother and the father's second wife checked up on the child's progress frequently. The child's second grade teacher from Double Springs also testified positively about the child's improved performance at school and that the *Page 1280 
father's second wife and the natural mother were following the child's progress closely.
The mother testified that she agreed to allow her child to live with the father because of the child's poor performance and unhappiness with the school in Haleyville. The mother testified that her second husband helps the child with homework and treats her like one of his own. The mother testified that she agreed to allow the child to live with the father during the school year only if the child came back on the weekends, holidays, and then during the entire summer. It appears that it was the mother's intention to move to Double Springs as soon as she and her second husband could find some land. In fact, at the time of the hearing the mother had moved to Double Springs.
The father testified and acknowledged the terms of the agreement he and the mother had concerning the shared physical custody of their daughter during the school year. The father had no criticism of the mother's second husband's treatment of the child.
Much of the testimony concerns the mother's attendance at a couple of lounges or bars at night. However, there was ample testimony that the mother has neither been seen "drunk" nor that she was frequently observed drinking alcohol nor that she ever used illegal drugs. It appears that on at least one occasion the mother, while exercising weekend custody, left the daughter with relatives so that the mother could go to a lounge or bar.
Both of the parties' present spouses testified. The father's wife testified about the interest and efforts that she has made on behalf of the child and that she treats her as one of her own. The mother's husband testified that he helps the child with homework and also that he treats her like one of his own.
There was an abundance of testimony taken from friends and family of both the mother and father. In essence, this testimony establishes that both mother and father have clean homes, that both take good care of the child, and that the child is well behaved and happy.
In sum, the evidence shows that the child has materially benefited from her stay with the father during the school year. Moreover, the evidence establishes that both parents can be considered fit and proper to exercise custody of their daughter. Further, since the trial court's order merely formalized the parties' own agreement as to physical custody, there will be no "disruption" in the child's living arrangement because it will be the same as that agreed to by her parents.
It is clear from the evidence that the child is showing improvement in her school work and is "happy." Further, it is doubtful that the mere change of schools was entirely
responsible for her overall betterment. The influence of the father as a result of the living arrangement has clearly had a profound impact upon his daughter. Conversely, it would be difficult to conclude that the child's poor performance in school, lack of discipline, and unhappiness were all the result of merely attending the Haleyville school.
The trial court concluded that the child was doing very well under the informal arrangement worked out by the parents. In view of the father's efforts to promote the welfare of his daughter, the trial court concluded that the best interests of the child would be materially served by allowing the father to share legal custody and to formalize the physical custody arrangement previously worked out by the parents, which has clearly benefited the child.
We affirm the judgment of the trial court.
The foregoing opinion was prepared by Retired Appellate Judge ROBERT P. BRADLEY while serving on active duty status as a judge of this court under the provisions of section12-18-10(e), Code 1975, and this opinion is hereby adopted as that of the court.
AFFIRMED.
All the Judges concur. *Page 1281