This is a custody case.
Beverly J. Ellis Martin and Roy C. Ellis were divorced in 1992, and they were awarded joint custody of their two children. In June 1993, the divorce judgment was modified to award the mother custody of their daughter, Kelly, and to award the father custody of their daughter, Jessica. In August 1993, the father filed a petition to modify the custody order, alleging that there had been a material change in circumstances, specifically, that the mother had temporarily moved to Georgia and that other moves would follow. He further alleged that it would be in Kelly's best interest for her custody to be transferred to him so that she could remain with her sister and continue to live near her extended family. The trial court entered an ex parte order awarding the father temporary custody of Kelly pending a hearing on the merits. Following ore tenus proceedings, the trial court awarded custody of Kelly to the father, subject to the mother's visitation. The mother appeals, arguing that the trial court failed to use the appropriate standard to modify the prior custody judgment.
Initially, we note that in child custody cases, when evidence is presented ore tenus, the judgment of the trial court is presumed correct and will not be reversed absent a showing of plain and palpable abuse of discretion. Ex parteJones, 620 So.2d 4 (Ala. 1992). The party seeking to modify a prior custody judgment must show that a material change in circumstances has occurred since that judgment, that a change in custody will materially promote the child's best interests, and that the benefits of the requested custody change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, 455 So.2d 863 (Ala. 1984). In the case sub judice, the burden of proof was not altered by the ex parte order. See Sims v. Sims, 515 So.2d 1
(Ala.Civ.App. 1987).
The father alleged that the mother's recent move to Georgia would separate the sisters, limit the parties' visitation, and severely limit the sisters' time together; that there was a likelihood of other future moves by the mother; and that Kelly desired to remain in Alabama with her sister and her extended family.
The record reveals that the father lives near Bremen, in Cullman County, and that he is a law enforcement officer for the Alabama Marine Police. He testified that he works 40 hours per week, that he basically determines his own hours, and that most of his work is on weekends. He stated that he lives beside his parents and that they help him care for the children.
The mother previously lived in Huntsville. In July 1993, she moved to Lilburn, Georgia, with her current husband, who was transferred in his employment. Testimony indicated that the mother and her husband live in an apartment in a "quiet neighborhood" that has other children and is in a good school district. The mother testified that she also received an employment transfer, and that she works regular hours including some hours on weekends.
At the time of the hearing, Jessica was 8 years old and Kelly was 6 years old. Kelly had completed kindergarten in Huntsville, *Page 792 
and since the ex parte order granting the father custody, she had begun first grade at the same school as her sister. Kelly's first-grade teacher testified that Kelly is a happy, energetic child and makes above average grades. Jessica is in the third grade and makes average grades. The father testified that he helps his daughters with their homework, that he takes them to school, and that he has attended conferences with teachers. Teachers and the assistant principal testified that the father actively participates in the girls' school life by transporting them before and after school, and that he shows concern and involvement in their academic progress. The father testified that the girls are in the Girl Scout program, that they take karate lessons, and that he plans to enroll them in ballet classes.
Before the ex parte order, the mother and the father alternated visitation so that the sisters could spend every weekend together. The father testified that the distance of the mother's relocation had made visitation severely difficult and had separated the sisters who were close in age. The mother admitted that on at least two occasions since her move, her work schedule had prevented her from exercising her visitation.
Although a change in the custodial parent's residence does not necessarily justify a change in custody, it is a factor for a trial court to consider when determining whether to modify custody. Patchett v. Patchett, 469 So.2d 642
(Ala.Civ.App. 1985). The record contains evidence that the mother's relocation made visitation more difficult; however, problems with visitation, even as the result of relocation by the custodial parent, are not alone sufficient to require a change in custody. Means v. Means, 512 So.2d 1386 (Ala.Civ.App. 1987).
There was evidence that the mother's relocation separates the sisters, thereby denying them time together and prohibiting the continued development of a normal sibling relationship. At the time of the previous order separating the sisters, the mother and the father lived in closer proximity, which allowed opportunities for close contact between the sisters. Furthermore, visitation was arranged so that the sisters spent every weekend together. The prior custodial and visitation arrangements were conducive to the sisters' having adequate family time with each other and together with each parent in an effort to preserve what remains of the family unit, and to lessen the consequences of divorce on the sisters. The distance of the mother's move to Georgia, when considered with other factors, such as her work schedule, the closeness of the ages of the sisters, the limitation on the time the sisters could spend together, and the potential isolation from relationships with extended family members, could have led the trial court to find a change in circumstances sufficient to warrant changing Kelly's custody to the father. Additionally, the record supports the necessary conclusion that the positive good brought about by changing Kelly's custody to her father would more than offset any inherently disruptive effects of the change.
It is noteworthy that in this case, Kelly would be "uprooted" to a certain extent, regardless of whether custody remained with her mother or was awarded to her father. The evidence supports a finding that awarding custody of Kelly to the father would be less disruptive than continuing custody with the mother. This is especially true given the unique facts of this case; i.e., allowing custody to remain with the mother would separate sisters to the extent that one sister would be practically isolated from all familiar circumstances, including relatives, yet allow the other sister to continue in familiar surroundings. To allow such separation of sisters so close in age would unnecessarily require the children to endure hardships and suffer consequences caused by their parents' divorce. In effect, the custodial separation in this case would also divorce the sisters from each other. Allowing these sisters to live together with their father and near to other relatives, lessens the impact on the sibling relationship of the mother's relocation, and, to some extent, limits the effects of the parents' divorce on the children.
The overriding consideration in all cases concerning the welfare of a child is always the best interests of the child. This court has historically given great deference *Page 793 
to the decision of the trial court, which is in the best position to observe the witnesses and hear their testimony. The record contains ample evidence from which the trial court could properly conclude that the father, as petitioner, met his burden. This court is bound to review the evidence to determine whether the trial court was plainly and palpably wrong in light of the standard set forth in McLendon. Ex parteJones, supra. After carefully reviewing the record, we cannot say that the trial court's decision was wrong in light of theMcLendon standard.
AFFIRMED.
ROBERTSON, P.J., and YATES, J., concur.