THIGPEN, Judge,
dissenting.
When the parties divorced in February 1993, custody of their teenage daughter was awarded to the mother. Although the father did not appeal that judgment, a few weeks later, he petitioned for a change of custody.
The record discloses that the parties’s post-marital relationship has been filled with contention and problems regarding visitation, including the father’s consistent refusal to return the daughter following visitation. Much of the testimony presented to the trial court pertained to the animosity between the parties regarding these visitation problems, and their difficulty with, and dissension between, one another. While it appears that both parents love their daughter and are capable of caring for her, nevertheless, their inability to interact with one another on a rational basis, and their failure to cooperate together for the benefit of their child, has effectively placed the child in their crossfire.
The father describes disputes between the mother and daughter as abuse, while the mother asserts that the father interferes and refuses to allow the daughter time to adjust to the circumstances of her parents’ divorce. The record clearly discloses that within weeks after the divorce, the father was not complying with the visitation order, and in spite of the daughter’s indicated preference to live with her mother, he was coaching the daughter to change her mind and choose to live with him. It is undisputed that when the teenage daughter and the mother disagree, the daughter calls the father to come get her. The mother testified that the father refused to allow the mother and the daughter to have time together to adjust following the divorce, and other record evidence clearly supports that fact.
It appears to me that the father never asserted nor attempted to prove the burden espoused by our Supreme Court in Ex parte McLendon, 455 So.2d 863 (Ala.1984). Rather, he testified that he wants custody changed to him because of the difficulties he encounters with the mother on visitation and his belief that the child should be allowed to live with the parent of her choosing. He indicates an unwillingness to abide by any court order other than one allowing the daughter to live with him, and that he filed for custody because that is what his daughter wanted. He provided absolutely nothing to indicate any change in circumstances which warranted a custody change, in the four months since the divorce, and he presented nothing to prove that the daughter’s best interest would be promoted by changing custody from one suitable and loving parent to another. Hermsmeier v. McCoy, 591 So.2d 508 (Ala.Civ.App.1991). At most, the father’s evidence, which was bolstered by the testimony of the mother and the daughter, proves that within six weeks after the divorce, the father began doing things to convince the daughter to change her preference for her custodial parent.
The mother objects to the father’s lifestyle since the divorce and accuses the father of subjecting their daughter to his adulterous conduct. It is undisputed that the father lived with a married woman immediately following his divorce, and that this woman subsequently divorced her husband and married the father approximately nine months after the father’s divorce. The mother testified that the daughter’s rebellion was a normal teenage behavior that was promoted by the father in an effort to get the daughter to choose the father over the mother, and that the father had not allowed the daughter to adjust to the rapid changes in life occurring around her.
There is evidence that, since the divorce, the father was arrested several times on charges relating to reckless endangerment and harassment of the mother, and-that on one occasion, he attempted to run her ear off the road. There is also evidence that since the divorce, the father has intentionally refused to comply with court orders regarding visitation and support. It is undisputed that without the court’s knowledge or approval, the father reduced his monthly court-ordered child support obligation by amounts he claimed to spend on the daughter during her visitation with him. When specifically questioned regarding that arrearage, the mother responded, “the money is not why I’m here.”
*10 The daughter testified regarding difficulties with her mother and her preference to now live with her father, rather than with her mother as she had indicated during the divorce proceedings. The daughter testified that she did not like living with her mother any more because things had not been as she expected, they did not get along, and that she would not stay with her mother even if the court ordered her to do so. The mother asserts that their difficulties partly result from the lack of parental support from the father, including his lack of support and cooperation obtaining counseling for the daughter to help her adjust to her parents’ divorce and her father’s lifestyle and remarriage.
Problems with visitation are not sufficient to necessitate a change of custody. Martin v. Ellis, 647 So.2d 790 (Ala.Civ.App.1994). Furthermore, I am “cognizant that the child’s wishes are given consideration in custody situations; however, those wishes are not controlling.” Hermsmeier v. McCoy, 591 So.2d at 509. See also Patterson v. Patterson, 345 So.2d 1364 (Ala.Civ.App.1977).
Aside from the normal difficulties encountered between a parent and a child, particularly those involving teenagers, there is no indication in the record that the mother has fallen short of her parental duties. She was permitted to exercise her legal custody for only a few weeks after the divorce before the father interfered. There is nothing to indicate that the child’s best interests and welfare would be better served by changing custody to the father. The child’s mere preference to live with her father is simply not enough. Glover v. Singleton, 598 So.2d 995 (Ala.Civ.App.1992). My review of the record discloses no evidence justifying a change of custody from one suitable parent to the other, and that the father has failed to meet his burden of proof. It is my opinion that there is no authority for the custody change, and it was error for the trial court to modify the prior custody order. Hermsmeier, 591 So.2d 508. There is simply no “obvious and overwhelming necessity” for changing custody from the mother to the father. Whitfield v. Whitfield, 570 So.2d 700, 702 (Ala.Civ.App. 1990).
I am mindful that the law imposes no rigid tune restrictions when seeking to change a prior custody order. Durham v. Sisk, 628 So.2d 873 (Ala.Civ.App.1993). When a custodial arrangement between divorced parents is unworkable, and delaying legal action poses risks for a child’s well-being, the parents should be allowed to petition the court for assistance in correcting custody problems as quickly as they are detected. Durham, 628 So.2d 873. My position on that, however, presupposes that loving parents will put aside their personal conflicts to cooperate for the benefit of their child. Courts have refused to punish parents for informally working together for their child’s best interests, even if they act in a manner that is inconsistent with the custody order. See e.g., Ex parte Couch, 521 So.2d 987 (Ala.1988); Garrison v. Garrison, 557 So.2d 1277 (Ala.Civ.App.1990).
In part, the burden on a party petitioning to change a prior custody order is heavy because frequent disruptions in the custodial arrangements of children of divorce are disfavored. See McLendon, 455 So.2d 863; see also, Wood v. Wood, 333 So.2d 826 (Ala.Civ.App.1976). In this case, the record is clear and undisputed that within weeks after the divorce judgment, the non-custodial father, who was living with a married woman, began sabotaging the custodial arrangements ordered by the divorce judgment. His adulterous lifestyle and open refusal to obey court orders have obviously impacted upon a vulnerable and impressionable teenager to the extent that she now indicates that she is not required to comply with court orders nor listen to or obey her mother. The dissenting opinion of Judge Yates in Durham contains language which I adopt as equally applicable to this ease:
“When parties divorce, an adjustment period is required for all involved, including the children. Here, the [father] returned to court after a brief period, not because the facts revealed that the [child was] suffering from the [custodial] arrangement, but instead, to satisfy [his] own needs, to the exclusion of the [mother], and *11 in my opinion, to the detriment of the [child].”
Durham, 628 So.2d at 877.
The difficulty of parenting a teenager, particularly one forced to adjust to the aftermath of her parents’ divorce, requires parents who are willing to place their child’s best interest above their personal differences. I am mindful of a court’s inability to fashion a judgment which adequately resolves all conflicts and disputes of contentious parties. The result of the majority’s opinion, however, allows a teenager, who has become angry with one parent’s supervision, and perhaps confused by the circumstances around her, to manipulate a custody change that is outside the legal requirements in order to live with the more lenient parent, who has openly demonstrated disrespect for authority, including the court of law. While I realize the difficulty, if not impossibility, of requiring this teenager to live with her mother against her wishes, I find no legal basis authorizing a legal change in custody in this ease. Because I would reverse the trial court’s judgment changing custody to the father, I must respectfully dissent.
Additionally, because I would reverse the custody determination, I would address the issue regarding the child support. Placing the father’s child support payments in escrow, pending the outcome of this action, presented a novel situation. I would, however, find that it is unnecessary for this court to review or determine the propriety of the trial court’s decision regarding the escrow and the subsequent disbursement of the es-crowed funds. The father’s motion to escrow stated that its purpose was to prevent the father from being held in contempt for nonpayment, and to prevent the mother’s enrichment “by receiving support when she does not have custody.” The contentiousness between these parties evidenced throughout the record may have caused the trial court to use this method out of an abundance of caution, and perhaps in an effort to prevent further problems.
In light of my decision to reverse the trial court’s judgment regarding the custody issue, I would instruct the trial court on remand to also revisit its determination regarding child support. In reconsidering the disbursement of the escrowed funds, I would remind the trial court that there are numerous, well-settled principles regarding past due child support. While it is within the discretion of the trial court to modify the future support, the trial court may not release or discharge child support payments once they have matured and have become due in accordance with a support judgment. Mann v. Mann, 550 So.2d 1028 (Ala.Civ.App.1989). The trial court, however, has discretion regarding the amount of arrearage by allowing credit to the obligated parent for money or gifts given to the child, or for amounts expended while the child lived with the obligated parent. Sutton v. Sutton, 859 So.2d 392 (Ala.Civ.App.1978); Nabors v. Nabors, 354 So.2d 277 (Ala.Civ.App.1978). Accordingly, on remand, the trial court may choose to allow the father credit against the escrowed arrearage for amounts he actually expended while the daughter lived with him.