749 So.2d 454 (1999)
P.A.T.
v.
K.T.G.
2971108.
Court of Civil Appeals of Alabama.
February 26, 1999.
Rehearing Denied May 14, 1999.
*455 Jeffrey B. Carr of Carr, Allison, Pugh, Howard, Oliver & Sisson, P.C., Daphne, for appellant.
LaTanya D. Rhines, Legal Services Corporation of Alabama, Gadsden, for appellee.
YATES, Judge.
The trial court divorced the parties on September 24, 1992. The divorce judgment incorporated an agreement of the parties that awarded custody of the parties' minor daughter to the mother. The parties reached a subsequent agreement regarding the custody of the child, and that agreement was adopted by the court on July 19, 1995. The subsequent agreement awarded the parties joint custody of the child, with the father being awarded primary physical custody.[1]
On November 5, 1997, the mother petitioned the court for custody of the child. The mother alleged that there had been a material change in circumstances, that the child had lived exclusively with her, and that the father rarely visited the child. On that same day, the mother also moved the court for an order granting her temporary custody of the child. The court granted the mother's motion on November 12, 1997, awarding the mother temporary custody of the child. On February 11, 1998, the father answered the mother's petition and counterclaimed, seeking custody of the child. Following an ore tenus proceeding, the court, on June 4, 1998, entered an order stating that the parties shall retain *456 joint custody of the child and awarding the mother primary physical custody of the child. The court ordered the father to pay $160 per month in child support. The court denied the father's postjudgment motion on June 26, 1998. The father appeals.
The record indicates that although the father was awarded primary physical custody of the child pursuant to the parties' agreement adopted by the court on July 19, 1995, the child has continued to reside primarily with the mother, except for periods of visitation with the father. Although the parties are acting in a manner inconsistent with the court's order of July 19, 1995, the father has not relinquished his court-ordered primary physical custody of the child. See Ex parte Couch, 521 So.2d 987 (Ala.1988).
When a noncustodial parent seeks a modification of a prior custody determination, the evidentiary standards set forth in Ex parte McLendon, 455 So.2d 863 (Ala. 1984), must be applied. The McLendon standard applies when the parents share joint legal custody and a previous judicial determination places primary physical custody of the child with one parent. Scacca v. Scacca, 694 So.2d 1 (Ala. Civ.App. 1997); see also Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996) (holding that McLendon standard applied where agreement between the parties granted the parties joint legal custody of the child, with physical custody to the mother, and agreement was adopted by the trial court). The petitioning parent must show by substantial evidence that a change in custody will materially promote the child's best interests and welfare. Ex parte McLendon, supra, Etheridge v. Etheridge, 712 So.2d 1089 (Ala.Civ.App. 1997). The petitioning parent must also show that the good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. The ore tenus rule is applicable to child-custody-modification proceedings, and the court's judgment based on findings of fact will not be reversed absent a showing that the findings are plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995).
The father petitioned the court, seeking full custody of the child, in 1995, after he discovered that a man, K.G., was living with the mother. The father learned that K.G. had been convicted of molesting a girl in Georgia and had served a three-and-one-half-year prison term for that crime.[2] The father testified that he agreed to the joint-custody arrangement with the mother in 1995, because, he says, the mother had assured him that K.G. was no longer living with her and that he was "out of the picture." The father also testified that he had agreed to permit the child to continue residing with the mother during the school year because the mother was helping her with her school work, she was doing well in school, and he did not want to cause her to have to change schools.[3] The mother denied that the joint-custody agreement had been based on K.G.'s not living in her home and testified that K.G. was still living with her when the parties entered into the joint-custody agreement. The mother further testified that she had understood the agreement to be that the child would live with her continuouslynot just during the school yearand that the father would have visitation. The mother also testified that the father had agreed to assist her with the child's school and medical expenses. Neither party was ordered to pay child support.
The father testified that he learned in August 1997, following the custody modification, that K.G. was living with the mother.[4] *457 Although the father had primary physical custody of the child pursuant to the joint-custody agreement, he did not take custody of the child upon learning that K.G. was living in the mother's home. The father testified that he did not want to "uproot" the child by causing her to have to change schools.
The mother testified that K.G. and the child, who at the time of the hearing was nine and one-half years old, have a good relationship. The mother stated that K.G. disciplines the child when she needs discipline and that the child tells K.G. that she loves him. The mother further testified that K.G. is involved in the child's activities, including Girl Scouts, and that they had attended a Girl Scout father/daughter dance together. However, the mother testified to an incident in which the child had told her that on at least one occasion K.G. had "dried her back off." The mother stated that she was concerned and questioned K.G. about the incident. The mother also testified that she had reported to a police officer that the child had told her that K.G. had molested her.[5]
A detailed recitation of the evidence indicating the parties' abilities as parents is not necessary. Suffice it to say that each party has a close, loving relationship with the child and would make a good custodial parent. Neither party contends that the other is an unfit parent. The mother has provided the primary residence for the child since the child's birth. The mother lives in a two-bedroom brick house with K.G. The child has her own bedroom in the house. Although the mother had been laid off from work at the time of the hearing, K.G. was employed, earning approximately $500 per week. The evidence indicates that the child had been well cared for and has not wanted for anything while in the mother's care. The father is employed and earns $12.45 per hour. The father lives in a four-bedroom double-wide mobile home and the child has her own bedroom there. The father has an 18-year-old son and a 17-year-old daughter from a previous marriage, both of whom he reared alone. The record indicates that the father provides for the child, providing clothes, Christmas and birthday gifts, food, medicine, and insurance. The father regularly enjoys extended periods of visitation with the child.
The mother argues that this court should affirm the award of custody to her, based on Garrison v. Garrison, 557 So.2d 1277 (Ala.Civ.App. 1990). In Garrison, the mother was awarded custody of the parties' daughter following the divorce. The mother and father did not reside in the same city. The mother voluntarily allowed the father to take physical custody of the child so that the child could attend school where the father lived, because the child's performance had declined and the child was unhappy with the school she was attending. The parties agreed that the child would live with the father during the school year and would return to the mother on the weekends and holidays and for the entire summer. The evidence indicated that the child's school performance improved while she was in the custody of the father, that she was happier, and that she was better disciplined. Id. This court affirmed the trial court's modification of the custody order to award custody of the child to the father, under the McLendon standard, finding that the modification merely formalized the parties' own informal agreement and that the child's best interests and welfare would be materially promoted by awarding custody of the child to the father. Garrison, supra.
Relying on Garrison, the mother contends that the evidence supports the *458 court's finding that the child's best interests and welfare would be materially promoted by awarding her custody and that the court's award merely formalized the agreement the parties already had. This case, however, is distinguishable from Garrison. The Garrison case turned on the fact that evidence indicated that the child's school performance improved while she was in the custody of the father and that with him she was happier and better disciplined. In this present case, the mother presented evidence indicating that the child was happy, was well-adjusted, and was performing well in school while in the mother's custody. However, no evidence indicated that the child was not happy and well-adjusted and would not perform well in school while in the custody of the father.
We note the unique facts presented by this case, in which the child has primarily resided with the parent that does not have primary physical custody. However, the father did not lose his court-ordered status as the primary physical custodian of the child simply because the parties had been acting in a manner inconsistent with the court's order. Ex parte Couch, supra; see also Ex parte Bryowsky, supra. Therefore, in order to obtain primary physical custody of the child, the mother had to produce substantial evidence to meet the stringent evidentiary standards imposed by McLendon. After carefully reviewing the record, we conclude that the mother did not present substantial evidence indicating that a change in custody would materially promote the child's best interests and welfare. We, therefore, must reverse the judgment and remand the case for the trial court to enter an order consistent with this opinion.
This court is keenly aware of the presumption of correctness that attaches to a trial court's judgment that is based on evidence presented ore tenus. However, when the evidence contained in the record does not support the judgment, we have no alternative; we must reverse it.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and CRAWLEY and THOMPSON, JJ., concur.
MONROE, J., concurs in the result.
NOTES
[1] Neither the parties' agreement nor the court's order is contained in the record.
[2] At the time of the hearing, K.G. was registered with the Marshall County Sheriff's Department as a convicted child molester.
[3] The father and mother do not reside in the same city.
[4] The mother and K.G. were married in July 1997. The father testified that he did not learn of the marriage until the mother testified at the ore tenus proceeding in this case.
[5] The record indicates that no charges were filed against K.G. based on this alleged incident. The mother testified that she has seen no evidence indicating that K.G. had molested the child.