I2GOTHARD, Judge.
Appellant LaPeze Dental Laboratories, Inc. [hereinafter “LaPeze”] appeals a May 29, 1996 judgment of the 24th Judicial District Court, the Honorable Martha C. Sas-sone, Judge, presiding, granting judgment in favor of Harry Lee, Sheriff and Ex Officio Tax Collector for the Parish of Jefferson [hereinafter “Tax Collector”] and dismissing LaPeze’s suit for refund of occupational licensing taxes paid under protest. The trial court rendered the following written reasons for judgment:
Harry Lee, Sheriff and ex-officio tax collector for the Parish of Jefferson (hereinafter “Tax Collector”) assessed occupational license taxes against LaPeze Dental Laboratories for the periods 1988 through 1992. On September 30, 1992, LaPeze paid $2,820.60, under protest, in occupational license taxes, interest and penalties for the tax periods 1988 through 1992. LaPeze has also paid, under protest, occupational license taxes for the years 1993, 1994, 1995 and 1996. The total amount in controversy is $4,540.00.
The testimony of John LaPeze clearly indicates that he is engaged in the practice of dentistry within the meaning of La. R.S. 37:751(B)(S). While La. R.S. 37:752(7) exempts Mr. LaPeze from the licensing provisions of Chapter 9 of Title 37 of the Revised Statutes, La. R.S. 37:751(D) declares the fact that a person who engages in or performs any of the practices or acts set forth by La. R.S. 37:751(B)(3), as Mr. LaPeze does, is prima facie evidence that such person is engaged in the practice of dentistiy. Under state law, Mr. IgLaPeze is engaged in the practice of dentistry such that he is liable for the occupational license tax applicable to dentists pursuant to the authority of La. R.S. 47:359(J).
On appeal LaPeze argues that the trial court erred in finding that LaPeze is liable for occupational license taxes and in failing to find that LaPeze is a manufacturer exempt from occupational licensing taxes under LSA-R.S. 47:360(F).

1. FACTS

John P. LaPeze graduated from Samuel J. Peters High School in New Orleans and began his career with L.M. Pfisterer[1] Dental Laboratory in 1938. But for a brief period in the Air Corps during World War II[2], Mr. LaPeze worked for Pfisterer and its successor-in-merger Prince Medical, Inc. for the next 41 years, continually promoted and eventually rising to the position of manager of the entire laboratory. During this period, Mr. LaPeze became a Certified Dental Technician with the National Board of Certification in 1963. In 1979 Mr. LaPeze retired from Prince Medical, Inc. and started his own lab, LaPeze Dental Laboratories, Inc. The laboratory employs six dental technicians and no dentists. The lab only makes “fixed” crowns and bridges, those that are permanently cemented into the patient’s mouth. The lab generates gross annual receipts of approximately $350,000.00 for the various years at issue. It does not sell to the public at large, but only sells to dentists. It only makes custom ordered prosthetic devices pursuant to impressions taken by dentists. In making the custom crowns and bridges, restricted raw materials, highly sophisticated, expensive equipment and as *48 many as 24 steps, including casting, firing, grinding, polishing and coating, are used.

\JI. STATUTES

The statutes involved in the instant matter are numerous.

A. Dentistry Statutes

Title 37 refers to the Louisiana State Board of Dentistry and regulates the licensing of dentists and the practice of dentistry in Louisiana.
LSA-R.S. 37:751 provides in part: Definitions
A. As used in this Chapter, “board” refers to the Louisiana State Board of Dentistry.
B. Dentistry means that practice in which a person:
* * * * * *
(3)Furnishes, supplies, constructs, reproduces, or repairs or offers to furnish, supply, construct, reproduce, or repair prosthetic dentures, bridges, or other substitute for natural teeth to the user or prospective user.
LSA-R.S. 37:752 provides for numerous exceptions to the regulatory power of the Louisiana Board of Dentistry:
The licensing provisions of this Chapter shall not apply to:
(1) The rendering of dental relief in emergency cases by a physician or surgeon ...
(2) [military or public health service dentists]
(3) [dental students]
(4) [licensed dentists of other states or countries attending meetings and conventions]
(5) [making x-rays]
(6) [making false teeth]
(7) The making and repairing of prosthetic dentures, bridges, artificial restorations or other structures to be used or worn as substitutes for natural teeth, or appliances for the correction of disease, loss, deformity, malposition, dislocation, fracture of or injury to the jaws, teeth, lips, gums cheeks, palate, or associated tissues or parts upon a written work order or prescription furnished by a licensed and registered dentist on a form approved by the Louisiana State Board of Dentistry as hereinafter set forth and constructed on, or by use of, casts or models made from impressions taken by a licensed and registered dentist if these prosthetic or orthodentic appliances, or the services rendered in the construction, repair, or alteration thereof are not offered for sale, or use, or delivery to the | spublic or placed or adjusted in the oral cavity, except by licensed and registered dentists.
(8)[licensed dentists or dental hygienists of other states who have obtained a temporary Louisiana license while working towards obtaining a full Louisiana license]
The statute which is the center of the instant controversy is contained in the definitional section of Title 37, namely LSA-R.S. 37:751, sections (B)(3) and D.(l), which state:
B. Dentistry means that practice in which a person:
* * * * * *
(3) Furnishes, supplies, constructs, reproduces, or repairs or offers to furnish, supply, construct, reproduce, or repair prosthetic dentures, bridges, or other substitute for natural teeth to the user or prospective user.
* * * * * *
D. (1) The fact that any person engages in or performs ... any of the practices, acts, or operations, set forth in this Section, is prima facie evidence that such person is engaged in the practice of dentistry. [Emphasis added].
LSA-R.S. 37:751B states “that practice in which a person...supplies ... bridges”. Thus the statute does not limit the work of supplying bridges to dentists, but rather any “person” can engage in that activity. Indeed, Mr. LaPeze is not a dentist and does not employ any dentists in his business. The legislature could easily have used the word “dentist” instead of “person” if it had wanted to limit this part of the profession solely to dentists. We note that use of the word “person” allows for juridical persons such as *49 corporations or partnerships. See: Civil Code Article 24.

B. State Occupational License Statutes

In contrast to the statutes in Title 37, cited above, which deal only with the practice of dentistry, the occupational licensing statutes in Title 47 deal with a vast variety of businesses and professions.
16LSA-R.S. 47:359 provides:
The following types of business shall obtain an annual license based on the flat fee designated hereafter ...
A.Private banking or investment banking businesses].
C. Peddlers and [retail] vendors.
D. Mechanical or electronic amusement machines or devices.
G. Professional sports
H. Circuses, concerts, carnivals or special events.
I. Hotels, motels, rooming houses, boarding houses and nursing homes.
J. All other businesses. For all business not otherwise covered by or specifically exempted under this Chapter, including but not limited to ... dentists ... the license shall be one-tenth of one percent of the annual gross receipts, for professional fees for services rendered by the taxpayer, with a minimum tax of fifty dollars and a maximum tax of two thousand dollars. The tax levied herein shall be levied only on the business and not separately on any individual who is employed by or is a member of the taxpayer which conducts its business as a firm, partnership, or corporation. [Emphasis added].
LSA-R.S. 47:360 creates exemptions to the occupational license tax requirements:
A. [Blind person and their widows or orphans]
B. [Artists and craftsmen]
C. [Nonprofit organizations]
D. [Wholesale dealers in certain alcoholic beverages]
E. [Banks, homestead and building and loan associations, editors, over-the-air broadcasters ... publishers, clerks, laborers, ministers of religion, school teachers, graduated trained nurses, agriculture and horticulture, sawmills and farmers’ banks]
F. Manufacturers shall be exempted from any provisions of this Chapter; however, manufacturers who sell their manufactured articles at retail shall be subject to the payment of a license tax on such retail sales as fixed by this Chapter.
G. [Disabled persons]

C. Parish Occupational License Ordinances

In addition to the state occupational license statutes quoted above, there are also parish ordinances which track the state language as allowed by the Louisiana Constitution. Article 6 Section 28 of the Louisiana Constitution allows:
|7The governing authority of a local governmental subdivision may impose an occupational license tax not greater than that imposed by the state ...
Accordingly, Jefferson Parish enacted in its Code of Ordinances, Article VI entitled Occupational License Tax. Section 35-153 therein provides:
(A) In addition to all other license and excise taxes imposed by other laws, there is hereby levied an annual occupational license tax upon each person, association of persons, partnerships, firms and corporations pursuing any trade, profession, vocation, calling or business in the parish, subject to license under Section 28, Article 6 of the 1974 Louisiana State Constitution and Louisiana Revised Statutes Chapter 3, Subtitle II of Title 47, R.S. 47:341 through 47:363, as amended.
Section 35-154 creates general definitions, including (5) ‘“wholesale dealer’ means any person who sells to other dealers who in turn resell” and (9) “ ‘business’ includes any business, trade profession, occupation, vocation or calling.”
Section 35 — 179(j) provides, like its state counterpart:
“For businesses not otherwise covered by or specifically exempted under this arti- *50 ele, including, but not limited to ... dentists ... the license shall be one-tenth of one (0.10) percent of the annual gross receipts for professional fees for services render by the taxpayer, with a minimum tax of fifty dollars ($50.00) and a maximum tax of two thousand dollars ($2,000.00) ...”
Section 85-180 tracks the language of its state counterpart, LSA-R.S. 47:360 quoted above, in providing:
(g) Manufacturers. Manufacturers shall be exempted from any provisions of this chapter; however, manufacturers who sell their manufactured articles at retail shall be subject to the payment of license tax on such retail sales as fixed by this chapter.
Thus it is apparent that under LSA-R.S. 47:360 H. and 35-180(g) LaPeze is exempt as a manufacturer, but under LSA-R.S. 47:359 J. and 35 — 179(j) LaPeze is arguably taxable as a dentist. LaPeze made the argument that it was exempt as a manufacturer at the trial court level. Thus the trial court judge apparently concluded Igthat LaPeze’s tax exemption as a manufacturer did not obviate his tax liability as a dentist.

III. Precedent

Although the tax exempt status of a dental lab may be res nova in this circuit, three other circuits have addressed the issue before us.

A Kleowdis

In the most recent case, City of Shreveport v. Kleowdis, 408 So.2d 956 (La.App. 2 Cir.1981), the school board and city of Shreveport brought suit against two dental laboratories and several dentists seeking a declaratory judgment declaring that sales of dental prosthetic devices by dental laboratories to dentists were subject to sales tax or, alternatively, that sales of such devices by dentists to their patients were subject to the sales tax. Both the dentists and the dental lab denied that the transactions in which they were engaged were taxable sales at retail under the provisions of the local sales tax ordinances. After trial the district court held that the sales by the dental laboratories to the dentists were sales at retail and subject to sales tax under the ordinances and that the charges made by the dentists to the patients were for professional services and were not subject to taxation under the local ordinances.
On appeal the dental labs argued that they are manufacturers, hence exempt and that sales made by them to dentists are not sales at retail because dentists are not the ultimate consumers. The dentists argued that charges made by them were shown on their own invoices as charges for professional services and not retail sales of tangible personal property. The Second Circuit affirmed the trial court’s ruling, noting that historically the dental labs had charged sales tax to dentists. Thus the Second Circuit held that the sale of the prosthetic device by a dental laboratory to |9the dentist is a sale at retail and a taxable transaction and that the dentist to patient transfer of the prosthetic device is not a sale at retail, but rather is the rendering of a professional service. In Kleowdis, the Second Circuit specifically found that the two cases discussed below were not applicable because “‘sale at retail’ or ‘retail sale’ [wa]s not specifically and expressly defined in the occupational license tax law as it is in the sales tax ordinances involved here”. The local sales tax ordinances in Kleowdis stated:
‘Retail Sale’ or. ‘Sale at retail ’ shall mean a sale to a consumer or to any person for any purpose other than for resale in the form of tangible personal property ...
The term ‘Sale at Retail’ does not include sales of materials for further processing into articles of tangible personal property for sale at retail ... [Emphasis added].

B. Dental Arts

In Dental Arts, Inc. v. Collector of Revenue, 360 So.2d 654 (La.App. 3 Cir.1978), the Louisiana Department of Revenue and Taxation (hereinafter “The Department”) assessed against Dental Arts, Inc. for occupational license taxes due from 1973 through 1976. In Dental Arts, the Department argued that LSA-R.S. 47:353 imposed an occupational license on every business that sells merchandise at retail. Dental Arts argued that it was exempt as a manufacturer under LSA-R.S. 47.-396E. The Third Circuit de *51 fined the sole issue before it as whether the transactions between Dental Arts and the various dentists constitute retail sales. The Third Circuit noted that the term “retail sale” was not specifically defined by the occupational licensing tax statute and chose instead to use the definition in American Creosote Works v. Collector of Revenue, 101 So.2d 245 (La.App.1958):
“retail sale” is any sale by one regularly engaged in the business of selling to customers who buy for their own consumption or use, and not for resale to others.
| ipThe court in Dental Arts further concluded that dentists do not substantially alter the prosthetic devices before the devices reach the ultimate consumer, the patient, nor do dentists incorporate the prosthetic devices into the dentist’s own work product. The court concluded that dentists do not buy the prosthetic devices to consume them, but rather purchase them for resale to their patients. Thus the Third Circuit concluded that because the sales from the dental lab to the dentists did not fall within the definition of retail sale under American Creosote, supra, no occupational license taxes were owed by Dental Arts.

C. Codesco

In Codesco, Inc. v. Collector of Revenue, 365 So.2d 577 (LaApp. 1 Cir.1978), the Department assessed occupational license taxes against Codesco for the years 1973-1976. The Board of Tax Appeals vacated the assessment and the Department appealed. The definition of retail sale used in Kleowdis, supra, was contained in a local ordinance. The same language, however, was also found in LSA-R.S. 47:301(10), but the First Circuit in Codesco specifically refused to use the definition on the grounds that it was contained in the state sales tax statute and they found that its applicability was expressly limited thereto. Instead the First Circuit looked to Webster’s Third World International Dictionary which defined “retail” as “the selling of commodities or goods in small quantities to ultimate consumers”, to the occupational license tax chapter definition of “wholesale dealer” as “any person who sells to other dealers who in turn resell” and to the American Creosote definition discussed supra. The First Circuit then distinguished the instant case from American Creosote, noting that:
unlike building contractors, dentists ... do not significantly modify the [prosthetic] devices before passing them on to their patients. The dentist in no way consumes the dental plate or bridge before conveying it. He simply installs it with a little cement or wire. While it might Inseem strange to think of a dentist as a dealer in dental devices, one should remember that the public can secure such products only through dentists.
Thus the First Circuit agreed with the Board of Tax Appeals and the 19th Judicial District Court and vacated the Department’s assessment of occupational license taxes.
Thus the First and Third Circuits have concluded that no occupational license taxes are owed by dental labs selling prosthetic devices exclusively to dentists and the Second Circuit has concluded that sales taxes are owed under local ordinances tracking the state sales tax rather than the state occupational licensing tax language.

IV. Discussion

Initially we note that the ruling of the Second Circuit in Kleowdis dealt with entirely different statutory language and dealt with sales tax, not occupational license tax. We distinguish Kleowdis, supra, from the ease at hand, just as the Second Circuit distinguished the First and Third Circuit eases of Dental Arts and Codesco, supra, in Kleowdis, supra.
We further note that in neither Dental Arts nor Codesco, supra, was the issue of LSA-R.S. 37:751 D.(l)’s prima facie evidence provision raised or discussed. Accordingly, we distinguish Dental Arts and Codesco, supra, on that basis.
LSA-R.S. 37:751 D.(l) provides for prima facie evidence “that such person is engaged in the practice of dentistry” whereas the occupational license statute provides for an occupational license for “dentists”.
Is it possible for LaPeze Dental Laboratories to be “engaged in the practice of dentist *52 ry” without being a “dentist”? We think that it is. We note that Title 37, dealing with the regulatory authority of the Louisiana Dental Board, indeed refers to “dental assistant” [LSA-R.S. 37:751 K.], “expanded duty dental assistant” [LSA-j^R.S. 37:751 L.\ and “dental hygienists” [LSA-R.S. 37:764], all as individuals who practice dentistry, but who are not dentists. LSA-R.S. 37:764 provides that a “dental hygienist” is, among other qualifications, a graduate of a training school of dental hygienists approved by the Louisiana State Board of Dentistry, whereas under LSA-R.S. 37:761, a dentist is, among other qualifications, a graduate of a dental college or university approved by the Louisiana State Board of Dentistry. Indeed, LSA-R.S. 37:761 provides the definitive statute answering the question of who is and who is not a dentist:
A. The board shall require that every applicant for a dental license shall:
(1) Be a citizen or a permanent resident of the United States.
(2) Present satisfactory evidence of graduation from a dental college or university approved by the Louisiana State Board of Dentistry, according to its rules and regulations.
(3) Submit for the files of the board a recent picture duly identified and attested; and such other character reference report as shall be required by the board.
(4) Present satisfactory evidence of having successfully passed an examination in the theory and practice of the science of his profession as given by the Joint Commission on National Dental Examinations before being accepted for the regular examination given by the board, or pass an examination given by the board in the theory and practice of the science of dentistry in addition to the regular examination given by the Louisiana State Board of Dentistry.
(5) Possess a current certificate in the American Heart Association cardiopulmonary resuscitation health care provider course or its equivalent.
B. In addition to these requirements, the board may decline to issue or renew a dentist’s license for any of the causes listed in R.S. 37:776.
We further note that the Louisiana Board of Dentistry recognizes that LaPeze Dental Laboratories, Inc. is not a dentist by its specific exemption in LSA-R.S. 37:752(7) quoted above, while simultaneously recognizing that the lab is practicing dentistry in LSA-R.S. 37:751 B(3).
Accordingly, we find that while LaPeze Dental Laboratories, Inc. is engaged in the practice of dentistry, it is not a dentist because it fails to meet the | ^qualifications for a dentist under LSA-R.S. 37:761 and has not been issued a license as a dentist by the Louisiana State Board of Dentistry.
Because LaPeze is not a “dentist” LSA-R.S.47:359 does not apply and no occupational license taxes are owed.
For the reasons discussed, the judgment of the district court is reversed and judgment is rendered as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of LaPeze Laboratories, Inc., granting to it a refund of taxes paid under protest in the amount of $4,540.00 plus legal interest from September 30, 1992 to the date of refund.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there is declaratory judgment herein that LaPeze Dental Laboratories, Inc. is not subject to the occupational license tax under LSA-R.S. 47:341 et seq. and Article VI, Sections 35-153 et seq. of the Jefferson Parish Code of Ordinances.
REVERSED & RENDERED.

. Variously spelled as "Pfister’' and "Pfisterer” in the record.

. While in the Air Corps, Mr. LaPeze was assigned to malte crowns and bridges, the same work he did for Pfisterer prior to his military service.