BUTTS, Justice.
We granted this petition for certiorari review to determine whether the Court of Civil Appeals properly affirmed the trial court’s order changing custody of a minor child from her mother to her father. We determine that it did not; therefore, we reverse.
I.
In 1989, Mavis June Peppers filed an action against Mohamed Abdel-Ghany, seeking an adjudication that he was the father of her minor daughter, M.K. The trial court determined that Abdel-Ghany was the child’s father and established visitation rights for him. In September 1994, the mother petitioned the trial court for a modification of the visitation order, alleging that M.K. had indicated to her that Abdel-Ghany’s stepson mistreated M.K. during periods of visitation with *300 Abdel-Ghany. The mother sought a temporary order restricting visitation so that M.K. would not be in the presence of Abdel-Gha-ny’s stepson during visitation.
After a hearing on September 26,1994, the trial court denied the mother’s petition. That same day, the father filed a “Counter-Petition to Modify and Petition for Rule Nisi,” in which he alleged that the mother had consistently prevented his visitation with M.K. and in which he sought custody of the child. After an evidentiary hearing, the trial court entered an order on May 15, 1994, changing custody of the child from Peppers to Abdel-Ghany. The Court of Civil Appeals affirmed, without opinion. Peppers v. Abdel-Ghany, 688 So.2d 51 (Ala.Civ.App.1996) (table).
II.
The mother argues that the trial court’s order conflicts with Alabama law establishing the level of proof a noncustodial parent must meet to justify a change of custody. In a child custody modification ease where a noncustodial parent seeks to modify a judgment granting custody to the other parent, the noncustodial parent must show that the change in custody will materially promote the child’s best interest and welfare. Ex parte McLendon, 455 So.2d 863 (Ala.1984). The noncustodial parent must also prove that the positive good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Foster v. Garden, 515 So.2d 1258 (Ala.Civ.App.1987). A trial court’s decision in a child custody proceeding is presumed correct; however, that decision may be reversed on appeal if it amounts to an abuse of discretion or is so unsupported by the evidence as to be plainly and palpably wrong. Foster.
The record shows that in 1989 Abdel-Ghany was adjudicated to be M.K’s father; however, he did not begin regular visitation with her until 1993. Peppers lives in Oneon-ta, and Abdel-Ghany lives with his wife in Tuscaloosa; the scheduled visitations took place in Abdel-Ghany’s home. After three months of biweekly visitation periods, Abdel-Ghany left the country on an eight-month sabbatical in conjunction with his occupation-as a college professor. During that eight-month period, he was in America for only one week; during that week Peppers scheduled visitation for him with M.K. After he returned from the sabbatical, Abdel-Ghany began regular visitation with M.K.
The record shows that, between January 1, 1994, and March 1995, Peppers refused to allow Abdel-Ghany to exercise 8 out of 28 scheduled visitation periods with M.K. On at least six of those occasions, Peppers informed the father that M.K. was too ill for visitation with him; the record confirms that the child received medical care for minor illnesses, such as colds and sinus infections, around the time of these scheduled visitation periods. According to Peppers, after M.K. had weekend visitation with Abdel-Ghany in August 1994, M.K. expressed fear about visiting Abdel-Ghany when his stepson was also visiting. She alleges that M.K., who was normally a very cheerful child, seemed emotional and upset after that visitation. Peppers testified that she attempted to discuss the problem with Abdel-Ghany and that, when he refused to talk to her about it, she sought a modification in the visitation provisions.
The record clearly shows that Abdel-Gha-ny petitioned for custody of M.K. in response to Peppers’s motion to modify his visitation, and that Abdel-Ghany believed Peppers was interfering with his visitation with the child by exaggerating the child’s minor illnesses and easting suspicion upon his stepson. In his petition, he complained that the mother had repeatedly prevented him from exercising scheduled visitation on occasions between January 1, 1994, and March 1995, and that she was threatening not to allow visitation at all if his stepson visited him at the same time M.K. did. He stated that because of these facts, “as well as another matter,” there had been a material change in circumstances and that it would be in the best interest of the child to change custody to him; however, Abdel-Ghany did not specify any “matters” against Peppers other than the disruption in visitation.
*301 There is little evidence to indicate that Abdel-Ghany’s stepson has ever mistreated M.K., and the record would support a finding that the mother’s fear in this regard was exaggerated. The evidence also shows that Peppers does not enjoy having M.K. visit Abdel-Ghany, that she is not particularly cooperative in ensuring that all scheduled visitations take place, and that M.K. perceives this. However, it is well established under Alabama law that a change of primary custody from one parent to another is not the answer to disputes over visitation; such disputes should be resolved by the parties, or by a finding of contempt if necessary, rather than by the drastic measure of changing custody. Foster v. Carden; Calabrisi v. Boone, 470 So.2d 1255 (Ala.Civ.App.1985).
We find this rule of law particularly applicable in this case, where there are no allegations that Peppers is an unfit mother or that she has failed to provide the child with all the benefits necessary to her mental, physical, and emotional health. The trial court’s order finds that the mother was interfering with visitation; however, beyond this, that order appears to be based primarily on a perception that Abdel-Ghany could provide the child with more material possessions and a more interesting and more varied life in Tuscaloosa. The trial court pointed out that Abdel-Ghany is married, maintains a “Christian” home, and is a college professor. The trial court also put special emphasis on the fact that Abdel-Ghany has two daughters from another marriage, who are now young adults. The trial court stressed that Abdel-Ghany provided these daughter with the benefits of travel and with ballet and karate lessons, and that M.K. could also expect to have these advantages from her father if she lived with him. The trial court did not recognize, however, that Abdel-Ghany had provided his other daughters with material advantages and a loving paternal relationship without having had primary custody of them; the daughters were reared in the custody of their mother.
The record shows that Peppers is employed, although she does not have a financial situation comparable to the situation Ab-del-Ghany enjoys. She maintains a clean
home in a safe neighborhood, and M.K.’s maternal grandmother lives with her. M.K. attends church with her mother and grandmother and is enrolled in the Oneonta City school system. M.K. has lived in this environment her entire life, with her mother as her primary caretaker, and she has, by all accounts, thrived. Throughout the proceedings, all the parties and witnesses, including child psychologists called as expert witnesses, and the trial court itself, unreservedly agreed that the child is unusually bright, cheerful, intelligent, and well adjusted. It is doubtful that the formation of the child’s character and personality is due solely to the visitation with her father that began when she was five years old; rather, it is indicative of the stable environment and consistent care that her mother has provided her since her birth.
At the hearing, Dr. Richard Ince, a licensed clinical psychologist, testified at length regarding his examinations of M.K. and his conclusions as to the effect a change of custody could have upon her. We find the following excerpts from his testimony to be quite telling:
“Q. ... [D]o you know of any reason, assuming the Judge sees fit, as to why [M.K.] should not be placed in the custody of her father?
“A. Just from my contact with her ... she just seems weary, which would be normal. If the dad had had her since birth, it might be the other way around. She is much more comfortable with her mother. There is a loving relationship. The mother’s sin, what sin she has, is she is highly protective. ...
[[Image here]]
“... I wouldn’t want to take a child when they are attached in a home that might be fine and put them permanently some place else unless for good reasons.
[[Image here]]
“... I would be skittish and worried about a child taken from some place [where] they feel much more comfortable and attached emotionally. I would be worried about taking them, uprooting and placing them elsewhere.
[[Image here]]
*302 “Q. Do you feel comfortable with [visitation in Abdel-Ghany’s] home?
“A. She has fun down there, no question. She doesn’t say that. But it is not home to her. I think she could have depression by not being at the one she considers home.”
The courts of Alabama have emphasized that a change of custody from one parent to another is not a decision, to be made lightly; on the contrary, it may be made only where the evidence discloses an obvious and overwhelming necessity for change. Glover v. Singleton, 598 So.2d 995 (Ala.Civ.App.1992). The evidence simply shows no such necessity in this ease. The record discloses only an unwillingness of the mother to allow the father full exercise of his visitation rights and, while this might well support a finding of contempt, it is not a sufficient basis to warrant a change of custody. The evidence clearly shows that M.K. lives in a secure environment and that her mother provides good care of her physical, mental, and emotional needs. M.K. also has the benefit of a loving father, who desires and exercises visitation with her and who can provide her with material and cultural advantages, as he has done for his other two daughters. Under these circumstances, M.K. has developed into a happy and well-adjusted child, and it is undisputed that the drastic change of custody ordered by the trial court could well threaten her well-being. We must therefore conclude that this order was an -abuse of the trial court’s discretion; although the trial court could have properly determined, in its discretion, that the mother was in contempt of the visitation order, Cala-brisi v. Boone, the evidence does not support a change in custody. We do emphasize, however, that if Peppers does not comply with the visitation order, the trial court has the discretion to find her in contempt. The judgment of the Court of Civil Appeals affirming that order is hereby reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SHORES, KENNEDY, COOK, and SEE, JJ., concur.
HOUSTON, J., dissents.