455 So.2d 863 (1984)
Ex parte Mr. and Mrs. W.R. McLENDON.
(re Mr. and Mrs. W.R. McLENDON v. John William McLENDON and Ruby Ann McLendon).
83-595.
Supreme Court of Alabama.
July 6, 1984.
*864 Al Seale and Frances R. Niccolai of Seale, Marsal & Seale, Mobile, for petitioner.
W.A. Kimbrough, Jr., Mobile, for respondent.
SHORES, Justice.
This is a child custody case. The child was born in 1977. The parents of the child were divorced in 1980. By agreement of the parties, which was made a part of the divorce decree, custody was awarded to the paternal grandparents, who had already been caring for the child. In 1982, the mother picked up the child for visitation and took her to California, the mother's new home, without advising the grandparents. The grandmother, after obtaining a California court order, regained custody of the child. She then petitioned the Circuit Court of Mobile County for suspension of the mother's visitation rights. The mother counterclaimed, seeking a modification of the decree to regain custody. Following an ore tenus hearing, the trial court awarded custody to the mother, subject to the liberal visitation rights of the grandparents. The grandparents appealed, and the Court of Civil Appeals affirmed the judgment. McLendon v. McLendon, 455 So.2d 861 (Ala.Civ.App.1984). Rehearing was denied, *865 and the grandparents petitioned for a writ of certiorari. We granted the writ under A.R.A.P. Rule 39(c)(4).
At the time of the hearing, the child was just under six years old and had been living with the grandparents since she was eleven months old, except for a period of about two months when she was with her mother in Tennessee. The child has remained with the grandparents during the pendency of this appeal because the trial court granted the motion of the grandparents for a stay of the custody award.
The mother's visits with the child over the past five years have been infrequent, although there is evidence of some extenuating circumstances, which may account for the lapses. It is undisputed that the grandparents provide a good home for the child and that the grandmother has been a good mother figure. The grandparents have provided substantial medical care for the child, nursing her through several illnesses.
It is also undisputed that the mother has remarried and is now able to provide a stable and wholesome environment for the child. She and her new husband have one child of their own and have an income adequate to support both children. The mother's new husband testified unequivocally that he would assist in the care and support of the child, and that he wanted custody to be returned to the mother. He and the mother agree that the grandparents can have all reasonable visitation rights and that, if they can afford to, they will send the child to the grandparents in the summer.
A natural parent has a prima facie right to the custody of his or her child. However, this presumption does not apply after a voluntary forfeiture of custody or a prior decree removing custody from the natural parent and awarding it to a non-parent. Ex Parte Mathews, 428 So.2d 58 (Ala.1983); Ex Parte Berryhill, 410 So.2d 416 (Ala.1982); Horton v. Gilmer, 266 Ala. 124, 94 So.2d 393 (1957); Lewis v. Douglass, 440 So.2d 1073 (Ala.Civ.App.1983).
In returning custody to the mother, the trial court may have incorrectly given the mother the benefit of this presumption. The trial court apparently misconstrued our holding in Ex Parte Berryhill, supra, wherein this Court said that in a contest between a natural parent and a non-parent for custody of a child, the natural parent has a superior right to custody. The Court of Civil Appeals correctly noted that the holding of Berryhill has no application when there is a prior decree removing custody from the parent. The superior right of the mother in this case was cut off by the prior decree awarding custody to the grandparents. McLendon v. McLendon, 455 So.2d at 862.
The correct standard in this case is:
"Where a parent has transferred to another [whether it be a non-parent or the other parent], the custody of h[er] infant child by fair agreement, which has been acted upon by such other person to the manifest interest and welfare of the child, the parent will not be permitted to reclaim the custody of the child, unless [s]he can show that a change of the custody will materially promote h[er] child's welfare."
Greene v. Greene, 249 Ala. 155, 157, 30 So.2d 444, 445 (1947), quoting the Supreme Court of Virginia, Stringfellow v. Somerville, 95 Va. 701, 29 S.E. 685, 687, 40 L.R.A. 623 (1898).
Furthermore,
"[This] is a rule of repose, allowing the child, whose welfare is paramount, the valuable benefit of stability and the right to put down into its environment those roots necessary for the child's healthy growth into adolescence and adulthood. The doctrine requires that the party seeking modification prove to the court's satisfaction that material changes affecting the child's welfare since the most recent decree demonstrate that custody should be disturbed to promote the child's best interests. The positive good brought about by the modification must more than offset the inherently disruptive effect caused by uprooting the child. *866 Frequent disruptions are to be condemned."
Wood v. Wood, 333 So.2d 826, 828 (Ala.Civ. App.1976).
It is not enough that the parent show that she has remarried, reformed her lifestyle, and improved her financial position. Carter v. Harbin, 279 Ala. 237, 184 So.2d 145 (1966); Abel v. Hadder, 404 So.2d 64 (Ala.Civ.App.1981). The parent seeking the custody change must show not only that she is fit, but also that the change of custody "materially promotes" the child's best interest and welfare.
For several years now, the Court of Civil Appeals has stated that the parent seeking custody has the burden of showing a change in circumstances which adversely affect the welfare of the child. Lewis v. Douglass, 440 So.2d 1073 (Ala.Civ.App. 1983); Simpson v. Gibson, 420 So.2d 782 (Ala.Civ.App.1982); Taylor v. Taylor, 387 So.2d 849 (Ala.Civ.App.1980); Keith v. Keith, 380 So.2d 889 (Ala.Civ.App.1980). This Court, in 1975, expressly rejected that standard in favor of the standard applied today. We held that "the use of the word `adversely' limits the law as stated in our cases." Ford v. Ford, 293 Ala. 743, 310 So.2d 234 (1975). We reaffirm that holding today and further hold that all contrary decisions, including the above-cited ones, are overruled to this extent.
We have examined the record carefully and conclude that the parties are equally capable of taking care of the child, and that both would provide her with a nurturing, loving home. The most that the mother has shown is that her circumstances have improved, and she is now able to provide for the child in the same manner in which the grandparents have been providing for her. She failed to show that changing the custody materially promotes the welfare and best interest of the child.
In Carter v. Harbin, supra, this Court affirmed the trial court's decree denying the mother's petition to remove custody from the father, who had it by the original decree. We find some of the language in Carter to be particularly poignant:
"In view of the evidence going to show that the father and stepmother are in all respects equipped to minister to the needs of the children in an adequate home where they are loved and cared for, we cannot believe it would be to the best interest of the children that they be uprooted again and taken to Huntsville to the home of their mother and her present husband, although it is clear that the present husband, as well as the mother, love the children and perhaps could afford them more of the luxuries of life than their father."
Carter v. Harbin, 279 Ala. at 240, 184 So.2d at 148. If we substitute "grandparents" for "father and stepmother," and "California" for "Huntsville," this language could have been written especially for this case. The children in Carter had been shuffled from one household to the next many more times than this child, but the need for continuity is not any less in the case of this child than in the case of the Carter children. We cannot overemphasize that "frequent disruptions are to be condemned." Wood v. Wood, 333 So.2d at 828.
The Court of Civil Appeals, in affirming the trial court's award of custody to the mother, held that the mother had met her burden "to show a change in circumstances since the divorce in 1980 and that the grant to her of custody was in the best interest of her child." McLendon v. McLendon, 455 So.2d at 863. Although the best interests of the child are paramount, this is not the standard to be applied in this case. It is important that she show that the child's interests are promoted by the change, i.e., that she produce evidence to overcome the "inherently disruptive effect caused by uprooting the child." Wood v. Wood, 333 So.2d at 828. This she has not done.
For these reasons, we reverse the judgment of the Court of Civil Appeals and remand the case to that court.
REVERSED AND REMANDED.
*867 TORBERT, C.J., and FAULKNER, JONES, ALMON, EMBRY, BEATTY, and ADAMS, JJ., concur.
MADDOX, J., concurs in the result.
MADDOX, Justice (concurring in the result).
I concur in the result. At the conclusion of the trial in the instant case, the trial judge stated: "I know you use the best interest theory when you are dealing with people on the same level, but that decision [Berryhill] appears to me, says that when they are on different levels you use different standards." It appears that the trial court applied the wrong legal principle in determining whether a right to modification of custody was proven. I would remand the case to the Court of Civil Appeals with directions that the Court of Civil Appeals remand the cause to the circuit court with directions that the circuit court determine the question of custody using the principles of law set out in the majority opinion. In other words, I would not make that factual determination at this level of review.