RUSSELL, Judge.
This is a child custody case.
The parties were divorced in June 1987. At that time the trial court awarded custody of the parties’ two minor children to the mother, with visitation rights granted to the father. The father filed a motion to amend the trial court’s judgment. In December 1987 the divorce decree was amended, and the trial court restored the case to the active docket for further action. The trial court heard additional testimony before rendering a final decree of divorce in March 1988, at which time the court found that the custody award of the children to the mother continued to be in the children’s best interest.
The divorce decree contained a provision that any move by the mother to relocate the children outside the state of Alabama “would be a significant change in circumstances that would be grounds for custodial review.” In October 1989 the mother filed a petition for modification, requesting that the trial court allow her to relocate with the children outside of Alabama. The father answered and counterpetitioned for transfer of custody of the children to him. After an ore tenus proceeding, the trial court entered an order dated October 4, 1990, changing custody of the two children from the mother to the father. The mother’s subsequent motion for new trial was denied.
The mother appeals, contending that the trial court erred in changing custody of the children to the father because, she says, the father failed to meet the standard established in Ex parte McLendon, 455 So.2d 863 (Ala.1984). She also contends on appeal that the trial court erred in failing to order the father to modify his retirement plan to allow her to make early withdrawals as an alternate payee under the plan. We affirm in part, reverse in part, and remand with instructions.
We note initially that there is a presumption of correctness that attaches to a trial court’s judgment when it is based on ore tenus evidence. This court will not reverse that judgment except for an abuse of discretion or where the judgment is unsupported by the evidence and is plainly and palpably wrong. Matter of Young, 456 So.2d 823 (Ala.Civ.App.1984).
The proper standard to be used by trial courts in determining whether to modify custody by transferring custody to the noncustodial parent is set out in McLendon, 455 So.2d 863. For custody to be transferred to the noncustodial parent, that parent must show that changing the custody “materially promotes the child’s best interest and welfare.” Id. at 866. This is a very stringent standard. It is necessary that the noncustodial parent submit evidence of a change in circumstances since the last decree so substantial as to reveal an obvious and overwhelming necessity for change of custody. Whitfield v. Whitfield, 570 So.2d 700 (Ala.Civ.App.1990). Frequent disruptions are condemned. The need for stability in a child’s life also necessitates the requirement that the party seeking the modification prove to the court’s satisfaction that the positive good brought about by the modification will more than offset the inherently disruptive effect caused by the uprooting of the child. McLendon, 455 So.2d 863.
The record reveals that the parties were married in San Juan, Puerto Rico, in 1976 and subsequently moved to Tuscaloosa, Alabama, where the father is a neurosurgeon. The mother, who has a master’s degree in social work but is not currently employed, remained at home during the marriage to care for the children and maintain the household. She received a substantial property settlement and alimony award following the parties’ divorce in 1987. Since the divorce she has had primary custody of the parties’ two minor children. The father has remarried since the divorce. The record also indicates a great deal of animosity between the parties, which has resulted in numerous court proceedings concerning issues of support and visitation.
In October 1989 the mother, who was born in Puerto Rico and is of Hispanic origin, petitioned the trial court for a modification allowing her to move to Puerto *3 Rico with the children. In his answer and counterpetition for modification, the father cited the mother’s proposed relocation as grounds for review of custody and asserted that a transfer of custody to him would be in the children’s best interest. The mother says she desires to return to Puerto Rico with the children because her family lives there; because of her current hostile relationship with the father; because she originally moved to Alabama as a compromise with the father and she now lacks social and cultural ties with the community; and because she feels that the parties’ children will receive a better education in Puerto Rico than in Alabama.
The trial court indicated in its final order that it based its decision to transfer custody of the children on such factors as (1) the mother’s wish to relocate in Puerto Rico, (2) expert testimony from two clinical psychologists regarding both the parents and the children, and (3) testimony from various lay witnesses and the parties’ own testimony and courtroom demeanor. The court noted that its decision rested primarily on the latter two factors, although the relocation issue was considered in connection with each.
In transferring custody to the father, the trial court placed great importance in the opinions and testimony of two psychologists who conducted numerous tests on and interviews with the parties. The court stated in its order that it gave more weight to testimony from Dr. Harriet Myers, who was a witness for the father. Dr. Myers testified that based on interviews with the mother and the results of character and personality tests she had administered to her, it was her conclusion that the mother was “overly defensive,” had poor stress tolerance, engaged in poor decision making, distorted her interpersonal situations, and had a dependency level at the “clinical level.” Dr. Myers, however, failed to conclude that these characteristics made the mother an unfit parent.
Dr. Cathy Brumback, who consulted with and performed several tests on the parties’ children and who interviewed the mother and administered personality and parenting stress tests to her, testified that test results indicated that the mother was feeling “stressed” and “very defensive at this time.” However, Dr. Brumback averred that parents frequently feel defensive when asked to complete testing that may be entered into court in custody matters. Dr. Brumback further testified that the mother’s test results “failed to indicate any significant problems in any area,” that the mother was fit to have custody, and that she did not feel that the children suffered in any way from being in the mother's custody. While Dr. Brumback did recommend that the mother seek counselling for the stress she has felt since the parties’ divorce, she further testified that “there is such a strong connection between the children and their mother on an emotional level” that it would be devastating to the children to transfer custody and that such a change would not be in the children’s best interest.
The trial court stated in its order that it found the mother’s demeanor, appearance, and testimony to be “very disturbing,” indecisive, and confused. It also expressed concern that since the divorce the mother has been “unable to get on with her life,” including finishing her doctoral dissertation and seeking employment, and that she had evidenced “unnatural paranoias and suspicions.” The court further stated that, with regard to the mother’s proposed move to Puerto Rico, “she appears to confuse her own needs with those of her children.”
We note here that a change in the custodial parent’s residence does not necessarily justify a transfer of custody; however, it is a factor to be considered when determining the outcome of a modification petition. Patchett v. Patchett, 469 So.2d 642 (Ala.Civ.App.1985).
Keeping in mind the limited weight that the trial court stated it was placing on the mother’s proposed move to Puerto Rico, we find that all the evidence simply does not show that the best interest and welfare of the parties’ children would be ■materially promoted by changing custody from one parent to the other. It is apparent that both parents love their children *4 and each desires to provide them with a loving home. Either parent is willing and capable of providing a suitable environment for the children. Testimony indicated that the children were always properly cared for, fed, and clothed while in the mother's custody and that the mother showed great interest in the children’s education. While the mother has been slow to resume her own academic pursuits and to continue with her career since the divorce, there is no indication that she has in any way fallen short of her parental duties in the four years that the children have been in her custody. Nor is there evidence in the record indicating that remaining in the custody of the mother would be detrimental to the children. Simply put, the father has failed to meet the stringent standard set out in McLendon. We would also note here that while a relocation would make it more difficult for the father to visit the children, problems with visitation are not alone sufficient to necessitate a change in custody. Means v. Means, 512 So.2d 1386 (Ala.Civ.App.1987). Accordingly, the portion of the trial court’s judgment awarding custody to the father is reversed and remanded to the trial court with instructions to enter an order consistent with our finding.
The second issue on appeal concerns the mother’s contention that the trial court erred in failing to order the father to modify his retirement plan to allow her to make early withdrawals as an alternate payee under the plan. The father, who does business under the name of Neurological Associates, P.C., argues that the trial court has no authority to compel him to amend his retirement plan because federal law preempts state courts from attempting to regulate the terms and conditions of an employee benefit plan within the scope of ERISA. He also argues that if he were to modify the plan to provide himself specialized treatment, he would be required to modify his corporation’s plan to grant the same option to other employees. He further argues that because he is obligated to continue supporting the wife with alimony payments, she should not be allowed to withdraw and possibly squander funds that might, m the future, relieve him of any obligation to pay alimony.
Without deciding whether federal law preempted the trial court’s authority to regulate the terms and conditions of the father’s retirement plan, we find that the trial court did not err when it failed to order the father to modify the plan. We agree with the trial court’s finding that, in this case, such an order would be inequitable and in violation of the spirit of the court’s prior decree. Accordingly, we affirm the trial court as to this issue.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and THIGPEN, J., concur.