This is a child custody modification case.
The trial court divorced the parties on February 26, 1992. The divorce judgment incorporated the agreement of the parties, stating that the parties would exercise joint legal custody of their minor child (a son, born November 2, 1987). The agreement further provided that the residence of the child was to be with the father "except during the specified times that the child will reside with the [mother]." The agreement also stipulated:
 "[S]hould the [father] move outside of Madison County, Alabama, then the primary residence of the child shall be with the [mother], unless she has moved previously from Madison County, Alabama, and the [father] shall pay child support to the [mother] in accordance with the Child Support Guidelines . . . and the [father] shall have the right to visit with the child in accordance with the Schedule of Standard Child Visitation."
In February 1996, the father petitioned the trial court to modify the divorce judgment, *Page 2 
seeking the removal of the provision restricting him from moving outside Madison County with the minor child. He stated that his new employer was located in Dothan; that he currently maintained two residences — one in Dothan and one in Madison County; that he had remarried; and that his current wife was living with the minor child in Madison County. The mother took primary custody of the child while the petition was pending. The mother counterclaimed for a rule nisi, seeking to have the court find the father in contempt for his failure to pay child support since the date she had taken primary custody of the child. She also asked the court to modify the divorce judgment to award her sole custody of the child.
After a hearing, the court, on June 27, 1996, awarded the mother primary custody of the child and ordered the father to pay $630 per month as child support. The father appealed, after the court had denied his post-judgment motion. He contends that the trial court: (1) erred in "granting effect to a restrictive custodial reversionary clause contained in the parties' original agreement"; (2) abused its discretion in changing custody solely because the father intended to move the child outside Madison County; and (3) erred in its calculation and award of child support by failing to consider the cost of the health insurance premium paid by the father to provide health insurance coverage for the child. The mother cross-appeals, contending that the court erred in failing to order the father to pay child support from the date the father filed his petition through the date of the June 1996 order.
Because the trial court based its ruling on ore tenus evidence, its ruling will not be reversed unless it is plainly and palpably wrong. Ex parte Murphy, 670 So.2d 51 (Ala. 1995). Further, this court has held that when a noncustodial parent petitions for a custody modification, that parent bears the burden of meeting the stringent standard set out by our supreme court in Ex parte McLendon, 455 So.2d 863 (Ala. 1984). That standard applies, as here, when the parents share joint legal custody but there is a previous judicial determination placing primary physical custody with one parent. "The petitioner must prove initially that a material change in circumstances has occurred since the last decree and that a change in custody would promote the child's welfare and best interests. Further, the benefits of the proposed change must clearly outweigh the inherently disruptive effect caused by uprooting the child."Crane v. Crane, 563 So.2d 615, 617 (Ala.Civ.App. 1990).
Testimony indicates that the father remarried in October 1993 and resides in the former marital home with his present wife, his stepdaughter, and his son, until such time as the mother assumed primary custody of the child. The stepmother has played a significant role in the child's life, picking him up from school every day and helping him with his school work. She was the room mother in the child's class at the school he attended while he was in his father's custody. The stepmother has a loving, affectionate relationship with the child; the child calls her "mom" in her presence.
In February 1996, the father began working in Dothan. He testified that he was working in Dothan every Monday through Friday and that he commuted to Huntsville on the weekends. The father, on February 15, 1996, petitioned for a modification of the divorce judgment; on that same day, the mother took primary custody of the child. Two days later, the mother, without discussing the matter with the father, enrolled the child in a school within walking distance of her apartment; the child had attended his former school since kindergarten. The mother instructed the school officials not to allow the child's stepmother to pick him up from school. The father experienced a great deal of difficulty in seeing or communicating with the child. The father testified that after the mother had assumed custody, he was not allowed to visit the child for 19 days. Eventually, a visitation schedule was established, but visitation continued to be a point of contention between the father and the mother.
A court-ordered mental evaluation of the child was conducted by Dr. Frank L. Preston. Dr. Preston's report was made a part of the record and was admitted into evidence during the hearing. That report reflects that in September 1995 the child had been diagnosed *Page 3 
with attention deficit hyperactivity disorder ("ADHD"), for which Ritalin was prescribed. The report and the record indicate that the mother had disagreed with the father and the diagnosing physician about if, and what amount of, Ritalin was beneficial to the child. The mother testified at the hearing that she was currently administering to the child the recommended dosage of Ritalin.
Dr. Preston's report also reflects that the child had been examined by an optometrist, who concluded that the child "needs help with laterality, borderline dysphoneidesia, auditory memory and interpretation of directions." In performing his evaluation, Dr. Preston requested information from the child's teacher at his former school and his teacher at his current school. The current teacher reported that the child was experiencing numerous behavioral problems, e.g., that he was easily upset, does not get along well with other children, is a poor loser at games, and is disrespectful of authority, to name only a few. In a teacher-parent conference 29 days before the hearing, the teacher reported that the child had 2 "G's" (good), 6 "N's" (needs improvement) and 18 "S's" (satisfactory) in the 26 areas rated by the teachers. Dr. Preston concluded:
 "[T]he 'best interests' considerations for this child will be most effectively served by the parent who will provide the following:
 "1. A calm, firm and consistent disciplinary approach which utilized predictable and nonphysical (e.g., spankings) consequences for oppositional or non-compliant behavior. The least amount of time he spends in 'day-care or after school programs' the better.
 "2. A scheduled-regimented style of life in terms of daily activities (i.e., a time to . . . wake, eat, play, study, bathe, etc.) and family routine (i.e., school, church, recreation, etc.). Adequate sleep is essential.
 "3. Access to both parents and regular contact with his half-sister [sic] to develop a sense of hierarchy (lines of authority) and an appreciation of 'give and take' operations within the home (predictable family duties and 'chores').
 "4. Parent compliance with physician and other professional's orders and recommendations about taking medication, utilizing eyewear, completing academic remediation (reading, spelling and language) and participation in post-counseling (e.g., behavior management program).
 "5. Involvement in peer activities and group interest (i.e., participation in sports, scouts, church, camp-outs, clubs, etc.) to gain a sense of self-confidence and learning the value of belonging to an age-mate peer group.
 "6. Proactive long range plan — being prepared to work throughout late adolescence with symptoms of ADHD, addressing academic challenges and modifying disciplinary approaches."
Both the father and the mother testified concerning the child's schedule while in his or her custody. While with the father, the child goes home after school, plays with neighborhood children, helps in meal preparation, studies with his stepmother, and then plays before his bedtime routine begins. While with his mother, after school he often has to go to work with her at her place of employment. During those times, he plays with other children that come into the shop; at other times, he plays with the children of his mother's friends. The mother and child eat out about 75 per cent of the time during the week. The mother has moved three times since the divorce.
The father testified that the child had experienced some behavioral and academic problems at his former school, but that the child had improved greatly during the school year, until the time he was moved to the new school. The mother testified that the child "loved" the new school and that he made good grades there, but her testimony conflicts with the psychologist's report that incorporates the current teacher's evaluations. Both parents testified that the other had a very loving relationship with the child.
The stringent standards of Ex parte McLendon, supra, must be considered in any decision concerning a change in custody, regardless of the fact situation. We rely on our decision inHovater v. Hovater, 577 So.2d 461 (Ala.Civ.App. 1990), with regard to the issue concerning the "custodial reversionary *Page 4 
clause" in the parties' original divorce judgment. InHovater, we found the custodial reversionary clause to be of no effect "because it is premised on a mere speculation of what the best interests of the children may be at a future date. We have found that an agreement of the parents is conclusive of the children's best interests only as long as the status of the parties remains unchanged." Id., at 463. The facts in Hovater
are similar to those of this case, in that the reversionary clause there dealt with a change of custody premised on the custodial parent's relocation outside the area where the parties had lived during their marriage. A change in the custodial parent's residence is only one factor to be considered in determining the outcome of a modification petition and does not necessarily justify a change in custody.Patchett v. Patchett, 469 So.2d 642 (Ala.Civ.App. 1985). The facts in Moore v. Moore, 585 So.2d 66 (Ala.Civ.App. 1991), are also analogous to those of the present case. In Moore, the mother, by agreement, was awarded custody of the minor child. Upon learning of the mother's anticipated move out of state, the father petitioned for a custody modification; the trial court granted the father's request. We held: "The parent seeking modification of a previous order granting custody bears the stringent burden of proving that a change in custody will materially promote the child's best interest" and that parent must also show that "such a change in custody will more than offset the inherently disruptive effect caused by uprooting the child." Id., at 67-68, citing Ex parte McLendon, 455 So.2d 863
(Ala. 1984). In addition, this court has held that a change in the custodial parent's residence and the accompanying problems with visitation, without other factors, do not justify a change in custody. Moore, supra, at 68.
It appears that the trial court based its change in custody on one factor — the father's move. In light of all the evidence, it is clear that the mother failed to meet her burden of proving that the proposed change in custody would materially promote the child's best interests and that it would outweigh the inherently disruptive effect of a change in custody. Therefore, the judgment is reversed and the case is remanded for the trial court to enter an order consistent with this opinion and applying the McLendon standard.
Because the trial court erroneously changed custody, the issues concerning child support are moot.
The mother's request for an attorney fee on appeal is denied.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, CRAWLEY, and THOMPSON, JJ., concur.