This is a child custody modification case.
The trial court divorced the parties on the grounds of incompatibility, on December 14, 1994, awarding them joint legal custody of their two minor children (a daughter, born November 30, 1988, and a son, born June 17, 1991), with the mother having primary physical custody and the father having specified liberal visitation rights.
On February 8, 1996, the father, after learning that the mother was planning to move to Minnesota and to take the children there with her, petitioned to modify the custody provision. On May 10, 1996, following a hearing, the court entered an order transferring primary physical custody to the father if the mother moves to Minnesota. It reserved the issues of visitation rights and support obligations until such time as the mother moves from Alabama. The court stated that if the mother "remains in Marion County, Alabama, the original divorce [judgment] . . . shall remain in full force and effect." The mother appeals, contending that the court erred because, she says, the father failed to meet the standard set forth in Exparte McLendon, 455 So.2d 863 (Ala. 1984), and also because, she says, the order impermissibly interferes with her right to travel.
This court has held: "The parent seeking modification of a previous order granting custody bears the stringent burden of proving that a change in custody will materially promote the child's best interest" and must also show that "such a change in custody will more than offset the inherently disruptive effect caused by uprooting the child." Moore v. Moore,585 So.2d 66, 67-68 (Ala.Civ.App. 1991), citing Ex parteMcLendon, 455 So.2d 863 (Ala. 1984). In addition, this court has held that a change in the custodial parent's residence and the accompanying problems with visitation, without other factors, do not justify a change in custody. Moore, supra, at 68. Because the trial court based its ruling on ore tenus evidence, its ruling will not be reversed unless it is plainly and palpably wrong. Ex parte Murphy, 670 So.2d 51 (Ala. 1995).
The evidence presented indicates the following: The parties were married in June 1983. They moved from Minnesota to Alabama after the father graduated from dental school. The mother is from Minnesota, and her family still resides there. She testified that she moved to Alabama so that the father could open a dental practice and that now that their life together is over she would like to go back home. The father testified that he grew up in Guin, Alabama, and in Minnesota and that he also has family in Minnesota. The fathers' parents live in Guin, but are retired; they testified that they travel frequently and are away from Guin approximately *Page 399 
40% of the year. They also testified that they travel to Minnesota whenever possible, to visit their other son, who lives there.
The record further reflects that the father sued for a divorce and that the mother counterclaimed for a divorce, alleging that the father had committed adultery. The father married his alleged paramour approximately six months after he was divorced from the mother.
Immediately following the divorce, the daughter experienced emotional difficulty, which caused her to have problems at school. The testimony from the mother and the child's counselor, as well as the counselor's records, indicates that the child experienced some anxiety and fear beginning about the time her father moved out of the house. She was unable to sleep except in her mother's bed, and she feared that someone would break in and kill her mother while she was in school. She also had problems at school because of a fear that her mother might not pick her up after school. She appeared to be suffering from poor self-esteem and an excessive need for approval, assurance, and attention. From all accounts, her condition has greatly improved and her problems have mostly subsided. Her teacher testified that she is an excellent student and is well liked by the other children. The mother testified that the daughter has overcome much of her anxiety, but that she still exhibits some anxious behavior when separated from her.
Although it appears that counseling has greatly benefited the daughter, the father testified that he believed the daughter's counselor was incompetent and that he did not support sending her to the counselor. The father's apprehension seems to be based on his one visit with the counselor, when, he says, he noticed that the counselor let the children play with toys and draw, rather than sitting them down and questioning them. The counselor testified that young children express themselves better through drawings and through conversations that are not forced, but that come about in the course of playing and relaxing. At one time, both children saw the counselor approximately every two weeks, and they now see him once a month. It is not clear how much longer the children will receive counseling, given the daughter's improved condition.
The mother wants to return to Minnesota to be close to her family. She testified that she had not decided exactly where she and the children would live in Minnesota, although she said she planned to move somewhere close to her parents. The mother also testified that she had checked into the schools in the area where her family lives and had discovered that there was an after-school program, so that her children could stay at the school until she left work. In addition, the testimony indicates that the maternal grandmother is a homemaker and will have time to help the mother with the children.
The mother testified that she believed the schools in Minnesota were better than those in Alabama. For instance, she explained that the schools there are better-funded, and she said that here she has to provide her daughter with even basic items such as toilet tissue for use at the school she attends. She also testified that the schools in Minnesota offer a much broader curriculum than the schools in Guin. The paternal grandfather testified that his children had attended schools in Alabama and in Minnesota and that, in his opinion, the Minnesota schools were better than those in Alabama. The maternal grandfather is a retired school teacher; he testified to the quality of Minnesota's schools.
No evidence was presented to show that the father offered a better home or was a better parent than the mother. Indeed, the record reflects that the mother is an excellent parent. However, the mother testified that she worried about the father's parenting abilities and that several instances had caused her to be concerned. For instance, after the parties' divorce and the father's remarriage, his young stepson allegedly fell into his swimming pool and had to be rescued, and the father and his present wife admitted to riding a roller coaster at an amusement park while leaving the young children under the care of an unknown park attendant. *Page 400 
The children testified that they wanted to move to Minnesota, even though it would mean they were a two-day drive from their father. They also testified that they had visited their grandparents in Minnesota every summer and also during Christmas holidays some years. The evidence indicates that the children have many relatives in Minnesota, including their maternal grandparents, and including aunts, uncles, and cousins on both sides of their family. No evidence presented indicates that moving to Minnesota would negatively affect either of the children. In fact, given the daughter's attachment to her mother, it appears that a separation from her mother, such as would occur if the mother moved to Minnesota without her, would be detrimental to the daughter. In addition, the record reflects that the mother is deeply concerned about the children's physical and emotional well-being and that the daughter's recovery is largely due to the mother's efforts to provide her counseling.
In light of all the evidence, it is clear that the father failed to meet his burden of proving that the proposed change in custody would materially promote the children's best interest and that it would outweigh the inherently disruptive effect of a change in custody.
The mother also contends that the conditional restriction on her moving to Minnesota is an impermissible restriction on her right to travel. This court noted in Everett v. Everett,660 So.2d 599 (Ala.Civ.App. 1995), that in some circumstances a parent's fundamental right to travel can be overcome by the compelling state interest in the best interests of a child. We also upheld a relocation restriction in Cohn v. Cohn,658 So.2d 479, 481-42 (Ala.Civ.App. 1994), cert. denied, 668 So.2d 575
(Ala. 1995), in which we stated:
 "Restrictions on the movement of children may be upheld when the territorial restriction promotes or protects the best interests of the children involved. . . .
 ". . . [T]he trial court's conclusion that removing the children from their current surroundings and environment at this time was not in their best interests is supported by ample evidence. We note that there is no prohibition against removal of the restriction in the future as the children's circumstances and needs change.
 "The mother's argument that the residence restriction on the children places an unreasonable or unconstitutional restriction on her . . . is unpersuasive. The territorial restriction applies to the children's residence, not to the mother's residence."
The father testified that he requested a modification of child custody only because the mother planned to move. Because the best interests of the children are served by their remaining with their mother, whether she resides in Alabama or in Minnesota, we reverse the judgment and remand the case for the trial court to enter an order consistent with this opinion.
The mother's request for an attorney fee on appeal is granted in the amount of $1,000.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, MONROE, CRAWLEY, and THOMPSON, JJ., concur.
ROBERTSON, P.J., concurs in the result.