YATES, Judge.
This is a child-custody modification case. The trial court divorced the parties on September 3, 1997. The divorce judgment incorporated an agreement of the parties, stating that the mother would have full care, custody, and control of the parties’ son, born on March 26, 1994, and that the father would exercise reasonable visitation. In October 1998, the father petitioned for custody of the child, arguing that there had been a material change in circumstances because the mother had begun attending college in another city and as a result the child was being eared for primarily by the maternal grandmother.
Following an ore tenus proceeding, the court, on February 5, 1999, awarded the parties “joint care, custody, and control” of the child and ordered that the father was to be “the primary custodial parent.” The court stated that “the evidence in this cause is more than sufficient to overcome the presumptions and/or standards set forth in the decision of the Alabama Supreme Court in Ex parte McLendon[, 455 So.2d 863 (Ala.1984)].” The mother appeals, following the denial on March 10, 1999, of her postjudgment motion.
“The ore tenus rule is applicable to child-custody-modification proceedings, and the court’s judgment based on its findings of fact will not be reversed absent a showing that the findings are plainly and palpably wrong.” E.M.C. v. K.G.Y., 735 So.2d 1225, 1227 (Ala.Civ.App.1999). This court has stated:
“When a noncustodial parent seeks to modify the custody provision of a prior judgment, the evidentiary standards set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), must be applied. The petitioning parent must show that a change in custody will materially promote the child’s best interests and welfare. Id. That parent must also show that the good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Butts v. Startley, 600 So.2d 310 (Ala.Civ.App.1992).”
Etheridge v. Etheridge, 712 So.2d 1089, 1091 (Ala.Civ.App.1997).
The parties were married in 1993 in Monroeville, where they were residing at the time of the divorce in 1997. The mother moved to Montgomery on or about August 20,1998, to attend college full-time. She obtained on-campus housing in a dormitory during her first semester. The university had a policy that prohibited children from living in the dormitory. The mother stated that she left her child in the care of the maternal grandmother during the week and that she returned to Monroe-ville each weekend and some weekdays. The mother obtained an apartment for herself and her son in December 1998.
The father stated that he did not have any concerns regarding the mother’s fitness or ability to care for the child; however, he said he was concerned that the mother’s college schedule would interfere *348 with the attention and time she was able to give to the child. He also stated that the child should not be moved to Montgomery because “moving him to Montgomery to an environment where he knows nobody, that will distract him.” The father added that he was seeking custody only while the mother attended school; however, upon further questioning, he admitted that he wanted the child raised in Monroeville; that he was “loosing out with my son where I didn’t come up with a father;” and that the child should remain around his family and friends. Character witnesses described both parents as loving and as having a healthy relationship with the child. Each witness stated that either parent would be a fit and proper person to care for the child.
The mother stated that at the time of the proceeding she was a junior in college, majoring in special education; that she attends classes and work-study during the day; and that the child would attend daycare, which is located close to her apartment complex. The mother further testified that the child would begin kindergarten in the fall of 1999 and that the school he would attend was located across the street from their apartment. When questioned about uprooting the child from Monroeville, the mother responded that her child “loves people” and that her son wanted to move with her and that he should have an opportunity to meet new people and be exposed to a different environment. The mother stated that the father would be welcome to visit the child more often than his scheduled visitation and that she frequently goes to Monroe-ville on the weekends.
It appears that the trial court based its change in custody on primarily one factor' — the mother’s move to Montgomery. This court has consistently held that “a change in the custodial parent’s residence is only one factor to be considered in determining the outcome of a modification petition and does not necessarily justify a change in custody.” Scacca v. Scacca, 694 So.2d 1, 4 (Ala.Civ.App.1997). Further, this court has held that “a change in the custodial parent’s residence and the accompanying problems with visitation, without other factors, do not justify a change in custody.” Id. at 4.; see also Hall v. Hall, 705 So.2d 397 (Ala.Civ.App.1997).
According to the testimony, both parties have a loving relationship with the child. It appears that the father’s petition is based primarily on his concern that the child’s relocation to Montgomery will hinder his relationship with the child; there is no testimony to support this assumption. We conclude that the trial court erred in finding that the father has met the burden imposed by the McLendon standard.
Accordingly, the judgment is reversed and the case is remanded for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
ROBERTSON, P.J., and MONROE, J„ concur.
CRAWLEY and THOMPSON, JJ., dissent.