William Tyrone Roberts and Aldrena Dennett Roberts were divorced in 1997, when their son was three years old. The trial court approved and incorporated the Robertses' divorce agreement, which granted the mother custody of the child and the father visitation with the child, as part of its judgment of divorce. In August 1998, the mother moved, without the child, from Monroeville to a dormitory on the campus of Alabama State University in Montgomery. The child remained in the home of his elderly, disabled maternal grandmother. In October 1998, the father petitioned for custody of the child. In December 1998, the mother rented an apartment and moved the child to Montgomery to live with her in the apartment.
The evidence at trial was presented ore tenus. Finding "that the evidence in this cause is more than sufficient to overcome the presumptions and/or standards set forth in the decision of the Alabama Supreme Court in Ex parte McLendon, [455 So.2d 863 (Ala. 1984)]," the trial court changed custody from the mother to the father. The mother appealed. The Court of Civil Appeals reversed the judgment of the trial court and stated:
 "It appears that the trial court based its change in custody on primarily one factor — the mother's move to Montgomery. This court has consistently held that `a change in the custodial parent's residence is only one factor to be considered in determining the outcome of a modification petition and does not necessarily justify a change in custody.' Scacca v. Scacca, 694 So.2d 1, 4 (Ala.Civ.App. 1997). Further, this Court has held that `a change in the custodial parent's residence and the accompanying problems with visitation, without other factors, do not justify a change in custody.' Id. at 4; see also Hall v. Hall, 705 So.2d 397 (Ala.Civ.App. 1997).
 "According to the testimony, both parties have a loving relationship with the child. It appears that the father's petition is based primarily on his concern that the child's relocation to Montgomery will hinder his relationship with the child; there is no testimony to support this assumption. We conclude that the trial court erred in finding that the father has met the burden imposed by [Ex parte McLendon, 455 So.2d 863 (Ala. 1984)]."
Roberts v. Roberts, 796 So.2d 346, 348 (Ala.Civ.App. 1999). The Court of Civil Appeals overruled the father's application for rehearing and denied his Rule 39(k), Ala.R.App.P., motion. The father petitioned for certiorari review, which this Court granted to determine whether the Court of Civil Appeals substituted its judgment for the judgment of the trial court. Ex parte Jones, 620 So.2d 4 (Ala. 1992).
The father contends that he satisfied the burden imposed by Ex parteMcLendon, supra, by proving that "the change of custody `materially promotes' the child's best interest and welfare," 455 So.2d at 866, and that "[t]he positive good brought about by the modification . . . more than offset[s] the inherently disruptive effect caused by uprooting the child." 455 So.2d at 865 (quoting Wood v. Wood, 333 So.2d 826, 828
(Ala.Civ.App. 1976)). The father contends further that the Court of Civil Appeals erred by reweighing the evidence, Ex parte Jones, supra, and by not according the trial court's custody order the proper presumption of correctness, Alexander v. Alexander, 625 So.2d 433 (Ala.Civ.App. 1993). According to the father, he presented sufficient evidence to *Page 351 
establish that the mother left the child with her disabled mother in an unhealthy environment; that two of the child's maternal uncles, who are convicted felons, stayed with the maternal grandmother while the child lived with her; and that the mother and one of the maternal uncles had a violent confrontation in the presence of the child at the maternal grandmother's home.
Although the trial court did not make specific findings of fact, the record reveals that the court heard testimony from the mother, the father, the maternal grandmother, the operator of the child's daycare center, and character witnesses. The trial court heard disputed testimony concerning the mother's lifestyle; the mother's leaving the child with the maternal grandmother for approximately six months before moving the child to Montgomery; the impediments of the maternal grandmother's age, physical disability, and health on her ability to care for the child; frequent visits by at least one of the maternal uncles, a convicted felon, with the maternal grandmother while the child was living with the maternal grandmother; and the maternal grandmother's allowing other relatives to care for the child while the child was living with her. After hearing arguments of counsel, the trial judge made the following statement:
 "Thank you very much. I'll take the case under advisement. Some of the things that concern me in the case are that the respondent, the [mother] here, essentially did leave the child in Monroeville for her convenience. And her subsequent plan to move the child to an apartment seems to be more of a contrivance. It's no trouble to find an apartment before you go to a college rather than living in a dormitory and had you planned to take the child with you after the lawsuit arrangements would have been made along those lines. I'm also concerned about [the maternal grandmother's] home as a place to keep this child. It has not been a successful home in some — some respects. Maybe with you it has been. At least two of her sons are now in — have been or are in prison involved in drugs. I know [D.A., a maternal uncle,] personally having met him in my work in the criminal side of this court. And another young man in that home might not do well, might not learn — Another thing I'm very concerned about is the fact that young men who are deprived of their father figure, through divorce, who lose sight of — of the male role, are a problem in society. Here I've got a father who wants to take an active role in his son's life and I don't want to deny that. So, it's a hard choice and I'm going to take it under advisement and make a decision about it. I hadn't made up my mind yet, I'm going to think about it for a while, but, those are some of the things I'm thinking about and I thought I'd let you know ahead of time."
This Court stated in Ex parte Bryowsky, 676 So.2d 1322, 1324-26 (Ala. 1996):
 "When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination — it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412, (Ala.Civ.App. 1993), set out the well established rule: *Page 352 
 "`"Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440
(Ala.Civ.App. 1989), and Vail v. Vail, 532 So.2d 639
(Ala.Civ.App. 1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpable wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343
(Ala.Civ.App. 1990); Flowers v. Flowers, 479 So.2d 1257
(Ala.Civ.App. 1985)."'
 "It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous. See the cases collected at 3 Ala. Digest 2d Appeal Error § 846(5) (1993).
". . . .
 "Neither the Court of Civil Appeals nor this Court is allowed to reweigh the evidence in this case. This case, like all disputed custody cases, turns on the trial court's perception of the evidence. The trial court is in the better position to evaluate the credibility of the witnesses . . . and the trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody."
The opinion of the Court of Civil Appeals, read in the context of the entire record, which we have examined, reveals that that appellate court reweighed the evidence in this case and substituted its judgment for that of the trial court. The testimony of the parties and other witnesses, and the inferences the trial judge was authorized to draw from his observation of the witnesses and from the substance of their testimony, sufficiently support the trial court's finding that the change in custody would materially promote the best interests of the child and that the benefits of the change would more than offset the inherently disruptive effect caused by uprooting the child. Ex parte Bryowsky and Ex parteMcLendon, supra. Accordingly, we reverse the judgment of the Court of Civil Appeals and remand the case to the Court of Civil Appeals for entry of a judgment consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
Moore, C.J., and Houston, See, Lyons, Brown, Harwood, Woodall, and Stuart, JJ., concur.