THOMPSON, Presiding Judge,
concurring in the rationale in part and concurring in the result.
I agree that the trial court properly certified its judgment as final for purposes of appeal. I also agree that the 2011 version of the Grandparent Visitation Act (“the GVA”), § 30-3-4.1, Ala.Code 1975, is unconstitutional in that it continues to allow a trial court to override a custodial parent’s- decision regarding grandparent visitation merely on a determination of the best interests of the child. 200 So.3d at 671. The main opinion eloquently articulates the grounds for such a conclusion. However, I disagree with the main opinion to the extent it suggests that, to pass constitutional muster, a trial court should find that the parents are unfit or that there has been a showing of “harm” to the child before the trial court can award grandparent visitation.
The issue of grandparent visitation is complex and involves the balancing of parents’ fundamental rights to rear their children without governmental interference and the importance of a child’s relationships with members of his or her extended family. In addition to the presumptions already in place favoring the parents’ decision regarding grandparent visitation, I believe that a heightened “best interest standard,” analogous to that used in deciding questions of custody modification, would adequately protect the interests of the parents, as well as the grandparents *673 and, most importantly, the child.[7] Under such a standard, a custodial parent’s decision regarding grandparent visitation would be presumptively correct, and the burden would be on the grandparents to demonstrate that visitation should be awarded.
To heighten the “best-interests inquiry” currently contained , in the GVA, the legislature should include other relevant factors for the court’s consideration. For example, in Maine, trial courts are required to consider whether the grandparent and child have had a “sufficient existing relationship” or whether the grandparent has “functioned as a parent to the child.” Rideout v. Riendeau, 761 A.2d 291, 301 (Me.2000). As the Maine Supreme Court pointed out in Rideout, the state has a compelling interest in ensuring a child’s “significant need to be assured that he or she will not unnecessarily lose contact with a grandparent who has been a parent to that child.” Id.
One commentator has surveyed the factors various state courts are required to consider when deciding the issue of “third-party visitation,” writing:
“Most third-party visitation statutes list factors a court should consider when deciding whether to grant visitation. Common factors include: the amount and quality of contact between the child and the third party; the quality of the child’s relationship with the parents; the effect of the relationship (or absence of relationship) between the child and the third party; the preferences of the child; the mental and physical health of all individuals involved; and a history of or threat of domestic violence or child abuse.
“Another factor, although not listed in most third-party visitation statutes, is the level of antagonism between the parents[ ] and the third party.... For example, grandparents who use their time with the child to undermine the child’s relationship with the parent or to try to gather incriminating evidence against the parent, have lost visitation.”
Jeff Atkinson, Shifts in the Law Regarding the Rights of Third Parties to Seek Visitation and Custody of Children, 47 Fam. L.Q. 1, 3 (2013).
Atkinson’s survey demonstrates that findings of parental unfitness or of harm are not necessary for a trial court to award grandparent visitation. I urge the legislature to give consideration to these additional factors if it chooses to revise the GVA.

. For example in Ex parte McLendon, 455 So.2d 863 (Ala.1984), our supreme court set forth three factors that a noncustodial parent must demonstrate to obtain a custody modification: (1) that he or she is a fit custodian; (2) that material changes that affect the child’s welfare, have occurred; and (3) that the positive good brought about by the change in custody will more than offset the disruptive effect of uprooting the child.