PITTMAN, Judge.
 

 Alisia Denese Rose (“the mother”) appeals from a judgment modifying the child-custody provisions of the judgment that divorced her from Eric Jackson (“the father”). The mother contends that the trial
 
 *274
 
 court erred in awarding custody of the parties’ child to the father.
 

 Apparently, the parties were divorced by a judgment that incorporated an agreement of the parties and that was entered on April 30, 2007. Four months later, the father filed a pleading asking the trial court to find the mother in contempt of court for having failed to comply with certain provisions of the parties’ divorce judgment. In that pleading, the father sought sanctions against the mother, including the sanction of awarding custody of the parties’ child to the father. Subsequently, the father filed an amendment to his pleading in which he requested a modification of the custody provisions of the parties’ divorce judgment, specifically seeking an award of physical custody of the child.
 

 The trial court conducted an ore tenus proceeding on April 3, 2008. The day before the hearing, the mother filed a request for an increase in child support and a request for a modification of the father’s visitation schedule; her requests were denied as having been untimely filed. During the hearing, only the father and the mother testified. Following that proceeding, the trial court awarded the father custody of the child and awarded the mother standard visitation. The mother filed a timely appeal.
 

 The mother first contends that the trial court erred in entering a judgment awarding the father primary physical custody, a custody modification as to which the standard set forth in
 
 Ex parte McLendon,
 
 455 So.2d 863 (Ala.1984), applied. She asserts that there was insufficient evidence to support the trial court’s finding “that the change in custody would materially promote the [child’s] best interest and that the benefits of the requested change would more than offset the inherently disruptive effect caused by uprooting [her].”
 
 See McLendon,
 
 455 So.2d at 865.
 

 The evidence adduced at trial indicated that the mother had violated the parties’ divorce judgment in a number of particulars: in failing to return the child to preschool at Head Start, in failing to follow the stipulated visitation schedule, and in defaulting on an automobile lease-purchase arrangement. The reasons for each of those violations, however, were disputed.
 

 The father testified that he had been very unhappy with the mother’s failure to follow all the conditions of their divorce judgment. The father also stated that the only reason he had filed the contempt action was to force the mother into treating him better vis-a-vis visitation. Although the child did not return to Head Start as directed in the parties’ divorce judgment, she did attend OIC Early Childhood Development Center; the mother stated that the father filled out the appropriate paperwork for OIC. The father admitted that he never attempted to process the Head Start paperwork himself. Moreover, by the time of the hearing in April 2008, the child was ready to begin public school in the fall; the mother stated that the child had been admitted into a local magnet-school program for the 2008-2009 school year. The evidence established that the child had essentially completed preschool and had been admitted to a magnet-school kindergarten class; none of these facts indicates that the child’s welfare had been affected in any manner.
 

 The father also testified that the mother had injured his credit rating by defaulting on a motor-vehicle lease-purchase agreement on a vehicle that she had been awarded in the parties’ divorce judgment. Although the testimony was conflicting, the mother admitted that her annual salary had decreased from $30,000 to $18,000 and that she had been unable to make the monthly payments on the vehicle. At the time of trial, she was negotiating with the
 
 *275
 
 pertinent finance company to establish a payment schedule that would satisfy the debt owed on the vehicle within the limits of her monthly income. The father did not indicate that the mother’s default on the lease-purchase agreement had in any way affected the child’s welfare; in fact, he testified that the mother had been able to afford to buy a used vehicle after the leased vehicle had been repossessed.
 

 Finally, we note that most of the father’s testimony surrounded the mother’s failure to follow the visitation schedule set out in the parties’ divorce judgment. The father admitted during the hearing that the parties had not had any problems with visitation since he had filed his pleading seeking custody of the child. In
 
 Kelley v. Akers,
 
 793 So.2d 821 (Ala.Civ.App.2001), this court stated that although the mother in that case had interfered with the parent-child relationship and had hindered the noncustodial parent’s visitation attempts, the trial court could not properly modify custody solely on that basis.
 
 Id.
 
 at 827;
 
 see also Vick v. Vick,
 
 688 So.2d 852, 856 (Ala.Civ.App.1997).
 

 Moreover, in a recent case,
 
 Brooks v. Brooks,
 
 991 So.2d 293 (Ala.Civ.App.2008), this court noted that when there is conflicting disputed testimony, this court may uphold the trial court’s judgment only insofar as it relies on one of the versions of conflicting testimony. However, when the evidence is clear or the question is one of law, the ore tenus rule, which requires an appellate court to presume that a trial court’s findings on disputed facts are correct, has no application.
 
 See Brooks,
 
 991 So.2d at 302. Just as in
 
 Brooks,
 
 the father’s testimony primarily addressed the parties’ visitation disputes; he also alleged that the mother had improperly affected his credit rating in a negative manner and that the mother had violated the divorce judgment by removing the child from Head Start. Those assertions by the father fail to satisfy the father’s burden under
 
 Ex parte McLendon.
 
 The father faded to establish how any of those actions by the mother had affected the child’s welfare. Moreover, the father did not show that material changes affecting the child’s welfare had occurred since the original award of custody, nor did he demonstrate how the positive good brought about by a change in custody would more than offset the disruptive effect of uprooting the child. Thus, none of the reasons cited by the trial court are sufficient to meet the standard set forth in
 
 Ex parte McLendon
 
 to support a modification of custody in this case.
 

 Based upon the evidence of record, we must conclude that the custody modification in this case is plainly erroneous; thus, we reverse the judgment modifying custody and remand the cause to the trial court.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.